[No. B168146. Second Dist., Div. Three. July 29, 2004.]

SUZANNE MALEK et al., Plaintiffs and Appellants, v.
BLUE CROSS OF CALIFORNIA, Defendant and Appellant.

46

COUNSEL

Law Office of Mark F. Didak and Mark F. Didak for Plaintiffs and Appellants.

Stephan, Oringher, Richman & Theodora, Gordon E. Bosserman, Robert M. Dato and Terrence M. King for Defendant and Appellant.

OPINION

CROSKEY, J.—■ In this appeal, we must determine the consequences of failing to comply with the arbitration disclosure requirements of Health & Safety Code section 1363.1.[1] That statute requires health care service plans to disclose in clear and understandable language, appearing "as a separate article" and "prominently displayed on the enrollment form" "immediately before the signature line" that the plan requires binding arbitration of any dispute, and that both parties are giving up their constitutional right to have the dispute decided in a court of law. Blue Cross's enrollment form violated section 1363.1 because the arbitration provision was not prominently displayed immediately before the signature line. Despite these violations, the trial court initially concluded that section 1363.1 was preempted by the Federal Arbitration Act (FAA) (9 U.S.C. § 1 et seq.) and granted Blue Cross's petition to compel arbitration. Almost three years later, the trial court reconsidered its ruling based on our decision in *Smith v. PacifiCare Behavioral Health of Cal., Inc.* (2001) 93 Cal.App.4th 139 [113 Cal.Rptr.2d 140], cert. den. (2002) 537 U.S. 818 [154 L.Ed.2d 23, 123 S.Ct. 92] (*Smith*), and thereafter denied the petition to compel arbitration.

■ Though both parties raise procedural challenges to the trial court's orders, we are principally concerned with whether the technical violations of Blue Cross's enrollment form render its arbitration provision unenforceable. Our decision in *Smith* did not so hold, but *Imbler v. PacifiCare of Cal., Inc.* (2002) 103 Cal.App.4th 567 [126 Cal.Rptr.2d 715] (*Imbler*), does. In that case, the court concluded that strict compliance with section 1363.1 is required to enforce the arbitration provision. We agree with the *Imbler* court. A violation of section 1363.1 renders a contractually binding arbitration provision in a health service plan enrollment form unenforceable. Although we do not foreclose the possibility that under the appropriate circumstances the doctrine of substantial compliance might apply, we conclude that the Blue Cross enrollment form at issue here does not substantially comply with section 1363.1. We therefore affirm the trial court's order denying the petition

---

[1] Unless otherwise specified, all further statutory references are to the Health and Safety Code.

to compel arbitration, along with its challenged orders vacating the arbitrator's award and vacating its original decision to grant the petition to compel arbitration.

## FACTUAL AND PROCEDURAL BACKGROUND

Our recitation of the factual and procedural aspects of this appeal is limited to those necessary for the resolution of the legal issues before us. Suffice it to say, Suzanne and Michael Malek (the Maleks) did not want to arbitrate this dispute and relentlessly attacked the trial court's order compelling them to do so. Three years after that order, the parties are back in court. Obviously, the "simplicity, informality, and expedition of arbitration," eluded the parties here.

### 1. *The Blue Cross Enrollment Form Contained an Arbitration Provision*

In 1996 and 1997, the Maleks enrolled in Blue Cross health care plans. The Maleks each signed an enrollment form that contained an arbitration provision (collectively, enrollment form).[2] The arbitration provision appears at the bottom of the one-page enrollment form. It is the second provision in the text at the bottom of the enrollment form and follows the section entitled "deduction authorization." Following the arbitration provision are additional sections entitled, "to non-participating provider," "declining coverage," and "authorization to obtain or release medical information." These section headings are in bold and capitalized letters. The text follows each section heading and is set in three columns. The arbitration provision is in the first column on the left-hand side of the enrollment form. The signature block is in the bottom right-hand side of the form, appearing below the authorization for the release of medical information.

---

[2] The arbitration provision in Suzanne Malek's enrollment form provides: "**ARBITRATION AGREEMENT**: I understand any dispute between myself (and/or any enrolled family member) and Blue Cross of California/California Care Health Plans/WellPoint Life must be resolved by binding arbitration, if the amount in dispute exceeds the jurisdictional limit of the Small Claims Court, and not by law suit or resort to court process, except as California law provides for judicial review of arbitration proceedings. Under this coverage, both the member and Blue Cross of California/California Care Health Plans/WellPoint Life are giving up the right to have any dispute decided in a court of law before a jury." (Boldface in original.) In the lower right-hand corner of the form is a number followed by "3/95." Blue Cross's counsel has represented that "3/95" is the date the form initially was printed.

The format and operative language of the arbitration clause in Michael Malek's enrollment form was the same, differing only in identifying the Blue Cross entity to be bound and in the date it was printed. That form has a "9/96" in the bottom right-hand corner, which indicated the date it initially was printed. Both of these forms were prepared after section 1363.1 went into effect on January 1, 1995. (§ 1363.1, added by Stats. 1994, ch. 653, § 3, p. 3161.)

Before the Maleks initiated this lawsuit, they also received finalized evidences of coverage (EOC), which set forth the terms and conditions of their Blue Cross group health care coverage. These EOC's contained arbitration provisions. The Maleks also received numerous letters from Blue Cross, and explanation of benefits forms, all of which advised them of their arbitration requirement.

### 2. The Maleks' Complaint and Blue Cross's Petition to Compel Arbitration

In October 1999, the Maleks filed a complaint alleging numerous causes of action against defendant Blue Cross and 'five other named defendants, who are not subject to this appeal, based on Blue Cross's allegedly improper denial of benefits for infertility treatment.

On November 18, 1999, Blue Cross filed a notice of petition and petition to compel arbitration and for stay of proceedings (hereafter petition). After supplemental briefing, on June 28, 2000, the trial court granted Blue Cross's petition to compel arbitration (June order). The trial court concluded that the Maleks' enrollment form constituted an arbitration agreement covered under the FAA.[3] Although the arbitration provision in the enrollment form did not meet the disclosure requirements of section 1363.1, the trial court concluded that based on *Erickson v. Aetna Health Plans of California, Inc.* (1999) 71 Cal.App.4th 646, 651–652 [84 Cal.Rptr.2d 76], the FAA preempted those requirements. Therefore, the trial court granted Blue Cross's petition, with the exception of the Maleks' injunctive relief claim brought under the Consumer Legal Remedies Act (CLRA).

In October 2000, the trial court appointed an arbitrator. After the arbitration proceedings commenced, the Maleks filed an amended complaint against Blue Cross, which included, among other things, an additional claim for injunctive relief, restitution, and disgorgement on behalf of the public under Business and Professions Code section 17200, unfair competition law, (UCL).

On April 1, 2002, the arbitrator ruled that he had jurisdiction over the Maleks' individual statutory claims under the UCL and CLRA for monetary relief but did not have jurisdiction to hear the "private attorney general" claims under those statutes.

---

[3] In ruling on the Maleks' motion for reconsideration, the trial court clarified its ruling in that it also relied on Michael Malek's EOC, which contained an arbitration provision.

### 3. *The Maleks Attempted to Vacate the Trial Court's Order Compelling Arbitration Based on Smith*[4]

In October 2002, the Maleks moved to vacate the trial court's June order compelling arbitration based upon our decision in *Smith, supra,* 93 Cal.App.4th 139. The trial court denied the motion because it lacked jurisdiction to consider the matter.

### 4. *The Arbitrator Dismissed the Arbitration Based on Smith and Its Progeny*

The Maleks then filed their motion to dismiss the arbitration before the arbitrator. The motion was based on the grounds that *Smith* and its progeny, *Pagarigan v. Superior Court* (2002) 102 Cal.App.4th 1121 [126 Cal.Rptr.2d 124], and *Imbler, supra,* 103 Cal.App.4th 567, required dismissal for, among other things, failure to comply with the disclosure requirements of section 1363.1. Blue Cross opposed the motion on the grounds that the arbitrator could not, in essence, reverse the trial court's order finding the existence of a valid arbitration agreement and compelling arbitration. The arbitrator granted the motion.[5]

### 5. *Blue Cross Filed a Petition to Vacate the Arbitrator's Award*

On March 17, 2003, Blue Cross filed a petition to vacate the arbitrator's decision to dismiss the arbitration on the grounds that the arbitrator exceeded his powers under the arbitration agreement. The Maleks opposed the petition,

---

[4] Following the trial court's order compelling arbitration, the Maleks filed a petition for writ of mandate, which was denied. (*Malek v. Superior Court* (Aug. 8, 2000, B1424654).) Their petition for review in the Supreme Court also was denied. (*Malek v. Superior Court* (Aug. 30, 2000, S090789).) Undaunted, the Maleks then filed a motion for reconsideration on the ground that *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83 [99 Cal.Rptr.2d 745, 6 P.3d 669], constituted a change in the law. The trial court denied that motion. Almost a year later, the Maleks unsuccessfully moved to vacate the arbitration order based on *Cruz v. PacifiCare Health Systems, Inc.* (2001) 91 Cal.App.4th 1179 [111 Cal.Rptr.2d 395], review granted October 31, 2001 (S101003) which was not final at the time of the motion, and the judgment was later affirmed in part and reversed in part by *Cruz v. PacifiCare Health Systems, Inc.* (2003) 30 Cal.4th 303 [133 Cal.Rptr.2d 58, 66 P.3d 1157].

[5] The arbitrator's ruling states: "There is no necessity of discussing the issue of whether or not there was an agreement to arbitrate in the first instance, since the Court *has decided* that there was an arbitration agreement and ordered the arbitration to proceed before me. However, as to the *legal validity* of the arbitration clause, I am still free to make an appropriate finding. In that respect, I am satisfied that the decisions in *Smith v. Pacificare, Pagarigan v. Superior Court* and *Imbler v. PacifiCare* reflect the law of the State of California and require that there be compliance with section 1363.1 before an arbitration clause can be enforced. In the instant case, the arbitration clause is subject to the same deficiencies as those described in *Smith, Pagarigan* and *Imbler.* Accordingly, the arbitration cannot proceed, and the matter must be returned to the Court for further proceedings."

arguing that Blue Cross had agreed that the arbitrator could decide jurisdictional issues, that the decision was correct, and that since the arbitrator's decision was legally correct, it could not be vacated.

The trial court concluded that the arbitrator's dismissal order was an award, and thereafter opted to exercise its limited jurisdiction under Code of Civil Procedure section 1285 to vacate the award. In so ruling, the trial court concluded that the arbitrator exceeded his power by making the determination that he lacked jurisdiction to proceed with the arbitration.

Having vacated the arbitration award, the trial court issued an order to show cause based on Code of Civil Procedure section 1008, subdivision (c), in which it noticed the parties that it intended to reconsider its June order to grant Blue Cross's petition to compel arbitration. The trial court's order to show cause was based on a change in the law. The court reasoned that *Erickson v. Aetna Health Plans of Southern Cal.*, *supra*, 71 Cal.App.4th 646, the case upon which it had originally relied in its order to compel arbitration, had been overturned by *Smith* and its progeny. Following a hearing on the issue, the trial court, citing our opinion in *Blake v. Ecker* (2001) 93 Cal.App.4th 728 [113 Cal.Rptr.2d 422], concluded that it would be error for it not to reconsider its prior order in view of the change in the law. Thereafter, the trial court entered a different order denying Blue Cross's petition to compel arbitration. These appeals followed.

### THE PARTIES' CONTENTIONS

Both the Maleks and Blue Cross challenge the trial court's orders.

The Maleks attack the trial court's decision to vacate the arbitration award. They contend that the trial court erred in vacating, as opposed to confirming, the award under Code of Civil Procedure section 1286.2, subdivision (a)(4), because even if the arbitrator exceeded his authority, any error in the award could have been corrected without affecting the merits of the decision. The Maleks further contend that Blue Cross waived this issue by submitting what it characterizes as a jurisdictional question to the arbitrator.

Blue Cross challenges the trial court's order to vacate its June order to compel arbitration. Blue Cross contends that the trial court lacked subject matter jurisdiction to reconsider the matter. Blue Cross further contends that the arbitration provision in the enrollment form was enforceable even though it did not strictly comply with section 1363.1, and that based on Code of Civil Procedure section 1281, the trial court could only invalidate the

arbitration provision on grounds that exist at common law for the revocation of a contract.[6]

## *DISCUSSION*

### 1. *The Trial Court Did Not Err in Vacating the Arbitration Award*

The Maleks contend that the trial court should have confirmed the arbitrator's award and not vacated it for two reasons. First, the requirements of Code of Civil Procedure section 1286.2, subdivision (a)(4), were not satisfied. Second, although the Maleks achieved the result they wanted, that is, to proceed in a judicial forum, the trial court's order delays that process because the denial of a petition to compel is an appealable order. (Code Civ. Proc., § 1294, subd. (a).) We need not dwell on the latter point, given the delays arguably attributable to the Maleks through the course of this three-year arbitration. Moreover, we conclude that the trial court did not err in vacating the arbitrator's award.

#### a. *The Applicable Grounds to Vacate an Arbitrator's Award and Standard of Review*

■ An award reached by an arbitrator pursuant to a contractual agreement to arbitrate is not subject to judicial review except on the grounds set forth in Code of Civil Procedure sections 1286.2 (to vacate) and 1286.6 (for correction). At issue here are the requirements of subdivision (a)(4) of Code of Civil Procedure section 1286.2.

■ Code of Civil Procedure section 1286.2 sets forth the grounds for vacation of an arbitration award. (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 12 [10 Cal.Rptr.2d 183, 832 P.2d 899].) One of the grounds for which the court "shall vacate the award" is if it determines that "[t]he arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted." (Code Civ. Proc., § 1286.2, subd. (a)(4).)

■ On appeal from an order vacating an arbitration award, we review the trial court's order (not the arbitration award) under a de novo standard. (*Reed v. Mutual Service Corp.* (2003) 106 Cal.App.4th 1359, 1364–1365 [131 Cal.Rptr.2d 524].) To the extent that the trial court's ruling rests upon a determination of disputed factual issues, we apply the substantial evidence

---

[6] Before addressing the enforceability of the arbitration provision contained in Blue Cross's enrollment form, we address the procedural issues that led up to that decision.

test to those issues. (*Id.* at p. 1365; see also *Advanced Micro Devices, Inc. v. Intel Corp.* (1994) 9 Cal.4th 362, 376, fn. 9 [36 Cal.Rptr.2d 581, 885 P.2d 994].) Applying these principles, we conclude that both the statutory requirements of Code of Civil Procedure section 1286.2, subdivision (a)(4), have been met.

### 1) *The Arbitrator Exceeded His Authority*

■ An arbitrator exceeds his powers when he acts in a manner not authorized by the contract or by law. (*Jordan v. Department of Motor Vehicles* (2002) 100 Cal.App.4th 431, 443 [123 Cal.Rptr.2d 122].) The "gateway" question of whether the parties are bound by a particular arbitration agreement is a question of arbitrability for the court. (*Howsam v. Dean Witter Reynolds, Inc.* (2002) 537 U.S. 79, 83–84 [154 L.Ed.2d 491, 123 S.Ct. 588]; see also Code Civ. Proc., § 1281.2 ["the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists . . . ."].)

■ Here, the arbitrator exceeded his authority by reexamining whether the parties were bound by the arbitration provision in the Blue Cross enrollment form. That decision was in the province of the trial court, which had previously determined arbitrability. The arbitrator's attempt to distinguish in his ruling an "agreement to arbitrate," which already had been determined to exist, and the "legal validity," which he purportedly decided, was a distinction without a difference. The legal validity of the arbitration provision, that is, whether an agreement to arbitrate exists, is a judicial determination, which the trial court made in its June order.

### 2) *The Arbitration Award Could Not Be Corrected Without Affecting the Merits of the Arbitrator's Decision*

The Maleks contend that even if the arbitrator exceeded his authority, the trial court could not vacate the award under Code of Civil Procedure section 1286.2, subdivision (a)(4), because the second requirement of that statute has not been satisfied. According to the Maleks, the second requirement of the statute requires the arbitrator's award to be "wrong on the merits." The Maleks assert that the award was not wrong because the trial court ultimately agreed with the arbitrator. We find this argument meritless.

■ We differ with the Maleks in our understanding of the second requirement of Code of Civil Procedure section 1286.2, subdivision (a)(4). That section provides that "the award cannot be corrected without affecting the merits of the decision upon the controversy submitted." It does not require that in order to vacate an arbitration award it must be wrong on the

merits. (Cf. *Advanced Micro Devices, Inc. v. Intel Corp.*, *supra*, 9 Cal.4th at pp. 376–377.) Rather, this requirement simply means that the arbitration award cannot be corrected without affecting the arbitrator's decision (whether right or wrong) on the merits.

Here, the trial court could not correct the arbitrator's award without affecting the merits of his decision. The arbitrator made a determination of arbitrability, which rested solely with the trial court, not the arbitrator. The only way to "correct" such an award would have been to reverse the arbitrator, which affects the merits of his decision.

We further reject the Maleks' argument relying on Code of Civil Procedure section 1286.6, subdivision (b).[7] That subdivision of the statute contains language similar to the second requirement of subdivision (a)(4) of section 1286.2 of the Code of Civil Procedure. As we have stated, the award could not be corrected without affecting the merits of the arbitrator's decision.

Finally, while the Maleks rely on *Lindenstadt v. Staff Builders* (1997) 55 Cal.App.4th 882, 892–893 [64 Cal.Rptr.2d 484], to advance their argument, we fail to see the relevancy of that case. The *Lindenstadt* court concluded that where one of the parties contends the entire contract or transaction underlying the award is illegal, the trial court is required to review the evidence de novo to determine whether the arbitration award was based on an illegal agreement or transaction. (*Id.* at pp. 888–889, 893.) That is not the issue here.

b. *Blue Cross Did Not Waive the Right to Challenge the Arbitrator's Decision*

The Maleks argue that Blue Cross has waived its right to challenge the arbitrator's award because in January 2002, Blue Cross submitted to the arbitrator the question of whether the Maleks' UCL claim was arbitrable. According to the Maleks, under California law, by submitting that issue to the arbitrator, Blue Cross became bound by the arbitrator's subsequent decision on whether the arbitration agreement was enforceable. We disagree. Neither logic nor the law supports the Maleks' position.

Blue Cross would not have submitted an issue to the arbitrator that would have jeopardized the June order compelling arbitration. The issue before the arbitrator was limited to the scope of the arbitration and whether the Maleks'

---

[7] Code of Civil Procedure section 1286.6, subdivision (b) provides in part: "Subject to Section 1286.8, the court, unless it vacates the award pursuant to Section 1286.2, shall correct the award and confirm it as corrected if the court determines that: [¶] . . . [¶] (b) The arbitrators exceeded their powers but the award may be corrected without affecting the merits of the decision upon the controversy submitted . . . ."

UCL claim was subject to the arbitration agreement.[8] This question did not leave open the possibility of revisiting the "gateway" issue that the parties had agreed to arbitration, which had already been decided in Blue Cross's favor and was not within the province of the arbitrator.

Moreover, the Maleks overstate the law to make their point. In both the cited cases, the parties agreed to submit the question of arbitrability to the arbitrator and challenged the arbitrator's authority only after the unfavorable award. In *United Food & Commercial Workers Union v. Clougherty Packing Co.* (1984) 154 Cal.App.3d 282 [201 Cal.Rptr. 183], the parties by agreement asked an arbitrator to decide if a particular seniority provision was arbitrable. The arbitrator answered in the affirmative but also went further by declaring the provision illegal under the Labor Code and existing case law. (*Id.* at pp. 285–286.) The company challenged the award, claiming the arbitrator exceeded his jurisdiction to decide whether the provision was illegal. The trial court disagreed and confirmed the award. The Court of Appeal affirmed, concluding that the issue had been submitted by agreement to the arbitrator. (*Id.* at p. 288.) The legality finding was upheld for two reasons. First, both parties had clear knowledge, well in advance of the hearing, that the legality aspect would be an issue even though not formally submitted. Second, it was the arbitrator's opinion that the underlying controversy could not be resolved without addressing the legality issue. (*Id.* at pp. 288–289.)

Likewise, in *University of San Francisco Faculty Assn. v. University of San Francisco* (1983) 142 Cal.App.3d 942 [191 Cal.Rptr. 346], the faculty association successfully contended that the trial court erred in upholding the university's claim that the arbitrator exceeded his authority in making an award relating to the supplemental pension benefits. The parties had agreed to negotiate on an annual basis the plan benefits and expressly agreed that an arbitrator would determine whether or not changes, durations, and modifications in that plan were within the scope of the arbitration. (*Id.* at pp. 948, 952–954.) Moreover, the parties had stipulated to permit the arbitrator to determine his jurisdiction. (*Id.* at p. 954.) As the court stated: "A claimant may not voluntarily submit his claim to arbitration, await the outcome, and if the decision is unfavorable, challenge the authority of the arbitrator to act. [Citations.]" (*Ibid.*)

---

[8] The arbitrator wrote, in part: "[A]n arbitrator has jurisdiction in the first instance to determine the extent of his or her jurisdiction. To state the matter specifically, as arbitrator I have the jurisdiction (or power, if one prefers) to determine (1) the arbitrability of the Maleks' claims for disgorgement of profits and restitution under the Unfair Competition Law ([Bus. & Prof.] Code [§§] 17200 & 17500, *et seq.*), both on behalf of themselves and the public generally (as private attorneys general) and (2) to adjudicate only those claims over which I find I have jurisdiction."

■ As noted, these cases do not advance the Maleks' argument, and are inapposite. Blue Cross and the Maleks did not agree to confer jurisdiction on the arbitrator to determine arbitrability, did not acquiesce to the determination of arbitrability by briefing the issue of the scope of the arbitration, and did not implicitly agree to the resolution of this issue by the arbitrator. There was no waiver here.

### 2. The Trial Court Did Not Lack Jurisdiction to Reconsider Its June Order to Compel Arbitration

Blue Cross contends that the trial court could not vacate its June order compelling arbitration until completion of the arbitration. In support of this argument, Blue Cross relies on Code of Civil Procedure section 1281.4, which provides that once arbitration is ordered, the court in which the action or proceeding is pending shall "stay the action or proceeding until an arbitration is had in accordance with the order to arbitrate or until such earlier time as the court specifies."

■ *Brock v. Kaiser Foundation Hospitals* (1992) 10 Cal.App.4th 1790 [13 Cal.Rptr.2d 678] (*Brock*), described the settled principles applicable to this jurisdictional issue. "Once a court grants the petition to compel arbitration and stays the action at law, the action at law sits in the twilight zone of abatement with the trial court retaining merely a vestigial jurisdiction over matters submitted to arbitration. This vestigial jurisdiction over the action at law consists solely of making the determination, upon conclusion of the arbitration proceedings, of whether there was an award on the merits . . . or not . . . . [Citations.]" (*Id.* at p. 1796.) As pertinent here, the court's "vestigial" jurisdiction included confirming, correcting, or vacating the arbitration award. (Code Civ. Proc., § 1285.)

While *Brock* sets forth the rule, that case, and *Titan/Value Equities Group, Inc. v. Superior Court* (1994) 29 Cal.App.4th 482 [35 Cal.Rptr.2d 4], upon which Blue Cross also relies, are inapposite because neither case involved a motion for reconsideration under Code of Civil Procedure section 1008, subdivision (c). In *Brock*, the court held that the superior court had no power to dismiss an action for failure to prosecute once it had granted the motion to compel arbitration. (*Brock, supra,* 10 Cal.App.4th at pp. 1801, 1808.) Likewise, *Titan/Value Equities Group, Inc. v. Superior Court, supra,* at pages 487–489, 35 Cal.Rptr.2d 4, held that the trial court could not make discovery and scheduling orders to move along the arbitration proceedings.

■ Although Blue Cross attempts to distinguish our opinion in *Blake v. Ecker, supra,* 93 Cal.App.4th 728, we find that decision controlling. In that case, like here, a change in the law required the trial court to

reconsider its prior ruling compelling arbitration. (*Id.* at pp. 738–739.) Blue Cross's distinction of *Blake* is based on the parties' near completion of arbitration. The progress of the arbitration is not material when considering a change in the law affecting whether the arbitral forum was a correct one. Based on Code of Civil Procedure section 1008, subdivision (c), the trial court could reconsider its order to compel arbitration in light of our decision in *Smith, supra*, 93 Cal.App.4th 139. As we will explain, however, the trial court's reliance on *Smith* as a basis for holding that strict compliance with section 1363.1 was required to enforce the arbitration provision, is misplaced. The conclusion the trial court reached, however, was a correct one. As we shall explain, the arbitration provision is unenforceable.

### 3. *Blue Cross's Arbitration Provision Failed to Comply with the Disclosure Requirements of Section 1363.1*

"As a part of its regulation of health care service plans, California imposes certain disclosure requirements as a predicate to the enforcement of arbitration clauses contained in plan subscriber agreements." (*Smith, supra*, 93 Cal.App.4th at p. 143.) Those disclosure requirements are set forth in section 1363.1.

Section 1363.1 provides:

"Any health care service plan that includes terms that require binding arbitration to settle disputes and that restrict, or provide for a waiver of, the right to a jury trial shall include, in clear and understandable language, a disclosure that meets all of the following conditions:

"(a) The disclosure shall clearly state whether the plan uses binding arbitration to settle disputes, including specifically whether the plan uses binding arbitration to settle claims of medical malpractice.

"(b) *The disclosure shall appear as a separate article in the agreement issued to the employer group or individual subscriber and shall be prominently displayed on the enrollment form signed by each subscriber or enrollee.*

"(c) The disclosure shall clearly state whether the subscriber or enrollee is waiving his or her right to a jury trial for medical malpractice, other disputes relating to the delivery of service under the plan, or both, and shall be substantially expressed in the wording provided in subdivision (a) of Section 1295 of the Code of Civil Procedure.

"(d) *In any contract or enrollment agreement for a health care service plan, the disclosure required by this section shall be displayed immediately*

*before the signature line provided for the representative of the group contracting with a health care service plan and immediately before the signature line provided for the individual enrolling in the health care service plan."* (Italics added.)

In this case, upon reconsideration the trial court found that Blue Cross's enrollment form did not comply with subdivision (d) of section 1363.1 because the arbitration provision did not appear immediately before the signature line. The trial court therefore concluded that the arbitration provision was unenforceable and denied Blue Cross's petition to compel arbitration.

Though the Maleks renew their argument that the enrollment form did not comply with any of the disclosure requirements,[9] we need not address them because Blue Cross concedes that the enrollment form does not comply with subdivision (d) of section 1363.1. We also conclude that the enrollment form does not meet the prominence requirement of section 1363.1, subdivision (b).

a. *Blue Cross's Enrollment Form Violates Section 1363.1, Subdivision (b), by Failing to Meet the Prominence Requirement*

As stated, section 1363.1, subdivision (b), requires that the disclosure "shall be *prominently* displayed on the enrollment form . . . ." (Italics added.) The Blue Cross enrollment form contains plan conditions toward the bottom of the form. The arbitration provision is in the same type size and font as provisions authorizing deductions and release of medical information. While the arbitration provision constitutes a separate numbered paragraph, it does not stand out and was not readily noticeable from these other provisions. We fail to see how this is prominently displayed in compliance with section 1363.1, subdivision (b).

---

[9] The Maleks first contend that section 1363.1 requires the disclosure to appear as a separate article in both the agreement to the employer group or individual subscriber (i.e., EOC's) and the enrollment form, and since the Maleks did not receive their EOC's at the time of enrollment Blue Cross did not meet the requirements of section 1363.1.

The trial court, however, concluded that Michael Malek had received his EOC and that it contained an arbitration provision. Moreover, the Maleks admitted that they received EOC's that contained arbitration provision before the commencement of this action.

The Maleks also contend that the text of the arbitration provision in the enrollment form was insufficient.

Finally, the Maleks contend that the enrollment form violated section 1363.1, subdivision (c), because it did not contain the proper disclosures required to arbitrate medical malpractice claims. This, however, is not a medical malpractice case.

b. *Blue Cross's Enrollment Form Violates Section 1363.1, Subdivision (d), by Failing to Meet the Placement Requirement*

■ Section 1363.1, subdivision (d), requires that the arbitration disclosure be "*displayed immediately before* the signature line." (Italics added.) It is undisputed that the arbitration provision in the enrollment form is not immediately before the signature line. Instead, the signature line appears immediately following the paragraph authorizing the release of medical information. The juxtaposition of the arbitration provision does not satisfy the statute's placement requirement. We must therefore determine the effect of Blue Cross's noncompliance, which is at the heart of Blue Cross's appeal.

4. *Noncompliance with Section 1363.1 Renders the Contractual Arbitration Provision in Blue Cross's Enrollment Form Unenforceable*

■ Blue Cross presents several arguments to support its contention that a technical violation of the requirements of section 1363.1 is not a defense to the enforcement of a contractual arbitration agreement. As discussed below, we are not persuaded and conclude that an arbitration provision in a health care service plan is unenforceable if it does not meet the mandatory disclosure requirements of section 1363.1.

a. *Imbler Concluded that a Violation of Section 1363.1 Rendered the Contractual Arbitration Agreement Unenforceable*

We begin with *Imbler, supra,* 103 Cal.App.4th 567, the only published case to directly address compliance with section 1363.1. In that case, the court concluded that the arbitration agreement could not be enforced based on noncompliance with section 1363.1. (*Imbler, supra,* at pp. 577–579.) The court determined that PacifiCare's benefits enrollment form did not comply with the notice requirements of section 1363.1, subdivision (b), which requires that the arbitration provision be "prominently displayed" on the enrollment form. The arbitration disclosure in the PacifiCare form was included in a paragraph authorizing the release of medical records. (*Imbler, supra,* at pp. 578–579.) The *Imbler* court reasoned that this did not meet the prominence requirement because " '[p]rominent' is defined as 'standing out or projecting beyond a surface or line,' or 'readily noticeable.' " (*Id.* at p. 579, fn. omitted.) In the *Imbler* court's view, this definition was not satisfied because a disclosure sentence in the same paragraph which was not "bolded, underlined or italicized," was not prominent. (*Ibid.*) Because the arbitration disclosure failed to meet the prominence requirement of section 1363.1, subdivision (b), *Imbler* concluded that the trial court properly denied PacifiCare's petition to compel arbitration. (*Id.* at p. 579.)

*Imbler, supra*, 103 Cal.App.4th 567, however, is the only case holding that strict compliance with section 1363.1, is necessary to enforce a health care service plan arbitration provision. In *Smith, supra*, 93 Cal.App.4th 139, PacifiCare had conceded noncompliance. (*Id.* at pp. 148–149.) Our focus in that case was on whether the McCarran-Ferguson Act precluded preemption of section 1363.1 by the FAA. Likewise, in *Pagarigan v. Superior Court, supra*, 102 Cal.App.4th 1121, the court assumed that any failure to comply with section 1363.1 rendered the arbitration clause void, but that case did not decide the issue. (*Pagarigan*, at p. 1128.) The *Pagarigan* court concluded that the general preemption provision of the Medicare Act did not preclude application of section 1363.1. (*Pagarigan*, at pp. 1147–1149; see also *Zolezzi v. PacifiCare of California* (2003) 105 Cal.App.4th 573, 580, fn. 6 [129 Cal.Rptr.2d 526].)

Although we agree with Blue Cross that neither *Smith* nor *Pagarigan* addressed the issue before us, we do not agree with the Blue Cross that we should depart from the decision reached in *Imbler, supra*, 103 Cal.App.4th 567. While the *Imbler* court assumed, without any discussion, that any transgression of section 1363.1 invalidated the arbitration provision, we reach the same conclusion based on our construction of section 1363.1. We conclude that based on the statutory language of section 1363.1 noncompliance with the arbitration disclosure requirements of that section renders the arbitration provision in the Blue Cross enrollment form unenforceable.

b. *The Arbitration Disclosure Requirements of Section 1363.1 Are Mandatory*

As previously discussed, health care service plans containing arbitration provisions *must disclose* in "clear and understandable language," appearing "as a separate article" and "prominently displayed on the enrollment form" "immediately before the signature line" that the plan requires binding arbitration of any dispute, and that both parties are giving up their constitutional right to have such dispute decided in a court of law. (§ 1363.1.)

Blue Cross contends that despite this mandatory language, noncompliance with the arbitration disclosure requirements of section 1363.1 is not a defense to a contractual arbitration agreement based on the language of Code of Civil Procedure section 1281. That statute provides that written arbitration agreements are "valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract." (Code Civ. Proc., § 1281.) "In other words, under California law, . . . an arbitration agreement may only be invalidated for the same reasons as other contracts." (*Armendariz v. Foundation Health Psychcare Services, Inc., supra*, 24 Cal.4th at p. 98.) Thus, according to Blue Cross, because only contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate the arbitration

provision in its enrollment form, noncompliance with section 1363.1 does not render its arbitration agreement unenforceable. We disagree.

When presented with a question of statutory construction, our primary task is to determine the Legislature's intent. (*Allen v. Sully-Miller Contracting Co.* (2002) 28 Cal.4th 222, 227 [120 Cal.Rptr.2d 795, 47 P.3d 639].) "We begin by examining the statutory language because it generally is the most reliable indicator of legislative intent. [Citation.] We give the language its usual and ordinary meaning, and '[i]f there is no ambiguity, then we presume the lawmakers meant what they said, and the plain meaning of the language governs.' [Citation.]" (*Ibid.*) If the statutory language is ambiguous, we consider the legislative history and select the construction that comports most closely with the legislative intent. We must promote, rather than defeat, the general purpose of the statute. (*Torres v. Parkhouse Tire Service, Inc.* (2001) 26 Cal.4th 995, 1003 [111 Cal.Rptr.2d 564, 30 P.3d 57].)

The plain language of section 1363.1 is clear—the arbitration disclosure requirements are mandatory. Section 1363.1 specifies that the arbitration agreement "shall" contain each of the enumerated disclosures in subdivisions (a) through (d). It is well settled that the word "shall" is usually construed as a mandatory term. (*Common Cause v. Board of Supervisors* (1989) 49 Cal.3d 432, 443 [261 Cal.Rptr. 574, 777 P.2d 610].) This is particularly true here where to construe the statute as optional would render it ineffective, a construction that we must avoid. Moreover, it would be inconsistent with the legislative intent that these disclosures be included in "[a]ny health care service plan that includes terms that require binding arbitration . . . ." This language evidences an implicit legislative determination that these disclosures *must be* included in a health care service plan to safeguard against patients unknowingly waiving their constitutional right to a jury trial. Section 1363.1, therefore, establishes the requirements that *must be satisfied* in order to arbitrate disputes involving a health care service plan. Accordingly, even though section 1363.1 is silent on the effect of noncompliance, because the disclosure requirements are mandatory, the failure to comply with those requirements renders an arbitration provision unenforceable.

Nothing in Code of Civil Procedure section 1281 prohibits the Legislature from establishing the requirements for the lawful contractual arbitration between a health care service plan and its participants. Section 1363.1 is not directed at arbitration agreements in general but is specifically applicable only to such provisions in health care service plan contracts. In this regard, the Legislature has specified these requirements in the context of health care service plans based on general state law contract principles. In doing so, the Legislature has determined that if the arbitration disclosure requirements are satisfied, by definition, binding arbitration is a contract term

and the arbitration provision is enforceable subject only to contract defenses. The converse must also be true. That is, absent the arbitration disclosure requirements of section 1363.1, the minimal requirements under state law contract principles have not been met and there is no contract to arbitrate that can be enforced.

### c. *Rosenfield v. Superior Court Reached the Same Conclusion When Construing the Mandatory Notice Provisions Related to Medical Malpractice Arbitration*

Although there is no published case[10] addressing whether noncompliance with section 1363.1 is a defense to an arbitration agreement, a similar

---

[10] The Maleks requested judicial notice of *Ciccarelli v. Blue Cross of California* (Jan. 22, 2003, B158965) [nonpub. opn.]) (*Ciccarelli*), in which Division Five of this court concluded in an unpublished opinion that noncompliance with section 1363.1 rendered Blue Cross's arbitration agreement unenforceable in a medical malpractice action. In that case, the arbitration provision failed to specifically disclose that the arbitration requirement applied to medical malpractice claims, simply referring to "any dispute." In addition, the arbitration provision in *Ciccarelli*, like the one here, failed to meet the placement and prominence requirements of section 1363.1. The Maleks contended that the holding of *Ciccarelli* "collaterally estops Blue Cross from denying the invalidity and unenforceability of its arbitration provisions at issue here."

Blue Cross opposed the Maleks' request for judicial notice. It argued that the request was based on the "fundamental misconception that an unpublished opinion from Division Five . . . can somehow be used to collaterally estop Blue Cross from arguing an issue that was not raised in *Ciccarelli*."

We granted the Maleks' request for judicial notice, noting that Blue Cross's opposition addressed the merits of *Ciccarelli*, not whether it could be judicially noticed. We further stated: "Our notice of this unpublished opinion constitutes no determination of the significance to our decision on the merits."

Following oral argument, Blue Cross brought to our attention *Kilroy v. State of California* (2004) 119 Cal.App.4th 140 [14 Cal.Rptr.3d 109], for the purpose of reiterating its argument that the Maleks cannot use offensive collateral estoppel here. In *Kilroy*, the court held that a federal court order suppressing evidence seized in a search pursuant to a disputed warrant was not the proper subject of judicial notice in a claim against the state for civil rights violations and related torts. The court concluded that it would have been proper for the trial court to take judicial notice of the order, at least to prove the truth of the fact that such an order was issued. (*Id.* at p. 145.) It would not have been proper, however, to take judicial notice of the facts found and recited in the order, which led the judge to conclude that the evidence had been obtained from an illegal search. (*Ibid.*) The court noted, however, that taking judicial notice of whether a factual finding is true is a different question than whether the truth of the factual finding can be litigated again. It concluded that the doctrines of res judicata and collateral estoppel will, when applicable, serve to bar relitigation of a factual dispute even in those instances where the factual dispute was erroneously decided in favor of a party. (*Id.* at p. 148.) Nevertheless, in that case the court concluded that collateral estoppel did not apply.

In the trial court, the Maleks did not raise collateral estoppel. Generally, a party may not raise issues for the first time on appeal. (*Johanson Transportation Service v. Rich Pik'd Rite, Inc.* (1985) 164 Cal.App.3d 583, 589, fn. 2 [210 Cal.Rptr. 433].) In any event, collateral

argument related to mandatory arbitration disclosure requirements was raised and rejected in *Rosenfield v. Superior Court* (1983) 143 Cal.App.3d 198, 203 [191 Cal.Rptr. 611] (*Rosenfield*). That case addressed the issue of whether the mandatory disclosure requirements to arbitrate medical malpractice claims as set forth in Code of Civil Procedure section 1295 were a basis for denying arbitration under Code of Civil Procedure section 1281.2. That statute compels a court to order arbitration if it "determines that an agreement to arbitrate the controversy exists, unless it determines that: [¶] . . . [¶] (b) Grounds exist for the revocation of the agreement."

The *Rosenfield* court concluded that the jury-waiver advisements were mandatory and failure to so advise would render an arbitration agreement unenforceable. (*Rosenfield, supra*, 143 Cal.App.3d at pp. 202–203.) The *Rosenfield* court reasoned: "To conclude that section 1281.2 takes precedence over section 1295, setting aside an arbitration agreement only if grounds exist for revocation of that agreement, would be plainly inconsistent with the Legislature's intent expressed in section 1295. The Legislature has specified the manner in which the communication of significant contractual consequences must be made to a patient. A clear understanding of those consequences assures the enforceability of the agreement." (*Id.* at p. 202.) According to the *Rosenfield* court, the enforceability of the contract rested on the reasonable expectation of the parties and if the arbitration agreement did not contain the notices of section 1295, "factual issues are then created concerning the parties' reasonable expectations and whether the contract is in fact oppressive or unconscionable." (*Id.* at p. 203.)

We find the *Rosenfield* court's reasoning equally applicable in construing whether the mandatory notice requirements of section 1363.1 can be reconciled with the defenses available to revoke a contract under Code of Civil Procedure section 1281. The disclosure requirements are necessary to form a contractual arbitration agreement. The disclosures communicate the contractual consequences of the jury waiver to ensure a knowing waiver of the right to a jury trial. Absent these disclosure requirements, there is no contractual agreement to arbitrate. This construction does not conflict with Code of Civil Procedure section 1281, which assumes the formation of a contract.

Although Blue Cross attempts to distinguish *Rosenfield, supra*, 143 Cal.App.3d 198, we find its arguments unpersuasive. The *Rosenfield* court's decision did not turn on the specific language of Code of Civil Procedure section 1295, or the lack of an administrative remedy, but rather, like here, on general contract principles of the reasonable expectations of the contracting

estoppel is not appropriate here because the issues decided in *Ciccarelli* are not identical to the ones raised here, and the issues decided were based on a different Blue Cross enrollment form. (See *Clemmer v. Hartford Insurance Co.* (1978) 22 Cal.3d 865, 874 [151 Cal.Rptr. 285, 587 P.2d 1098].) More importantly, we have not relied on *Ciccarelli* to decide this case.

parties. We therefore conclude that the Legislature's determination in section 1363.1 as to the specific manner in which to communicate the contractual consequences of arbitration are necessary to enforce the arbitration provision in a health care service plan. If these requirements have not been met, there is no indicia that the health care service plan enrollee knowingly assented to arbitration. Therefore, noncompliance with section 1363.1 renders the arbitration agreement unenforceable.

### d. *The Knox-Keene Act Is Not the Exclusive Remedy for Noncompliance of Section 1363.1*

Blue Cross contends that absent an express statutory prohibition, a contract entered into in violation of section 1363.1 is not for that reason void because the exclusive penalties for noncompliance are those provided in the Knox-Keene Act (Act).[11]

### 1) *The Omission of Statutory Language Relating to the Consequences of Violating Section 1363.1 Is of No Legal Significance*

Blue Cross contends that since section 1363.1 is silent on the consequences of failing to comply with the disclosure requirements, the Legislature must have concluded that failure to comply would not render an arbitration provision unenforceable. Invoking the doctrine of *expressio unius est exclusio alterius*, that is, the expression of certain things in a statute necessarily involves the exclusion of other things not expressed, Blue Cross asserts that had the Legislature wanted to make the arbitration provision void for failure to comply with the disclosure requirements, it would have explicitly said so in section 1363.1. To support this argument, Blue Cross cites two sections of the Act in which the Legislature explicitly stated the consequences of noncompliance. Section 1374.5, provides that a health service plan's lifetime waiver of mental health service coverage in a nongroup plan "shall be deemed unenforceable." Section 1358.6, subdivision (a)(2), prohibits a health

---

[11] When enacted "the Knox-Keene Act expressly conferred upon the Department [of Corporations] the authority to license health plans (Health & Saf. Code, §§ 1349–1356) and health plan solicitors (former Health & Saf. Code, §§ 1357–1358), to enforce prohibitions against false or misleading advertising (Health & Saf. Code, §§ 1360–1361), to review disenrollment decisions (Health & Saf. Code, § 1365, subd. (b)), to require annual reports regarding financial status (Health & Saf. Code, § 1383), to conduct on-site surveys to assess the quality of medical services being administered (Health & Saf. Code, § 1380), to 'approve, disapprove, suspend, or postpone the effectiveness of' any 'material modification' of a health plan or its operation (Health and Saf. Code, § 1352, subd. (b)), and to enforce through disciplinary and other enforcement measures the law regarding operation of health plans (Health & Saf. Code, § 1386 et seq.)." (*Van de Kamp v. Gumbiner* (1990) 221 Cal.App.3d 1260, 1273 [270 Cal.Rptr. 907].)

service plan from entering into Medicare supplement contracts that contain prohibited provisions. Although these statutes contain explicit language, we find any comparison to section 1363.1 unpersuasive based on the mandatory language of section 1363.1 and the jury-waiver involved.

Moreover, the express mention in one particular statute of enforceability does not imply that a statute silent on that matter compels the opposite conclusion. Instead, as noted, section 1363.1 creates a mandatory obligation on the contracting parties. The language itself implies that an enrollment form complying with these notice requirements will be enforced. Such a contract cannot be enforced against the party that did not knowingly waive his or her right to a jury trial. There is no need to explicitly state the consequences of failure to comply when this statutory language is clear and unambiguous.

For this reason, Blue Cross's reliance on *Gonzales v. Concord Gardens Mobile Home Park, Ltd.* (1979) 90 Cal.App.3d 871 [153 Cal.Rptr. 559], is misplaced. That case involved violations of the notice requirements in the state contractors' license laws. The contractor violated statutes related to notice of the state's lien laws (Bus. & Prof. Code, § 7018) and notice on a written contract of the state's contractors' license requirement (Bus. & Prof Code, § 7030). (*Gonzales*, at pp. 872–873, 875.) The court concluded that since the statute did not include a penalty for noncompliance, and another provision in the contractors license law had, the doctrine of *expressio unius est exclusio alterius* must reasonably be applied. (*Id.* at pp. 874–875.) The similar principle of statutory construction does not apply here because to do so would contravene the plain meaning of section 1363.1, and such application would, therefore, be unreasonable.

2) *The Administrative Penalty Is Not the Exclusive Remedy for Noncompliance with Section 1363.1*

We also reject Blue Cross's argument that the Act treats violations of section 1363.1 and similar provisions as regulatory matters subject to the administrative penalties set forth in the Act[12] that are within the exclusive enforcement powers of the Department of Managed Health Care (Department). (Cf. *Samura v. Kaiser Foundation Health Plan, Inc.* (1993) 17 Cal.App.4th 1284, 1299 [22 Cal.Rptr.2d 20], cert den. (1994) 511 U.S. 1084 [128 L.Ed.2d 463, 114 S.Ct. 1835].)

---

[12] In support of this argument, Blue Cross lists a number of provisions in the Act setting forth penalties and remedies for violation of provisions of the Act, including sections 1386, subdivision (b) [suspension or revocation of licenses], 1387 [civil penalties], 1391 [cease and desist orders], 1392 [injunctive relief], 1394.1–1394.3 [involuntary dissolution], and 1390 [criminal prosecution].

Section 1363.1 is different from other regulatory provisions of the Act that Blue Cross cites in support of its argument. (See, e.g., §§ 1363.01 [disclosure of prescription drug formulary], 1363.02 [notice of reproductive health services], and 1363.5 [disclosure of denial of health care services process].) Those sections are pure notice requirements. Section 1363.1 requires notice that is necessary to ensure consent to a *binding agreement to arbitrate.* (§ 1363.1.) The very purpose of the disclosure requirement of section 1363.1 is to ensure that *the parties agree* to be bound to contractual arbitration.[13] It would be absurd to impose an administrative penalty on a health service plan provider for failure to comply with the arbitration disclosure requirements but permit arbitration to go forward. Under those circumstances, there would be no consent to arbitrate. Therefore, we find inapposite the authorities construing other provisions of the Act and concluding that no private right of action exists (e.g., *Samura v. Kaiser Foundation Health Plan, Inc., supra*, 17 Cal.App.4th at pp. 1301–1302), and stating the broad authority of the Department to enforce provisions of the Act (e.g., *Van de Kamp v. Gumbiner, supra*, 221 Cal.App.3d at pp. 1284–1285).

e. *The Legislative History Supports Our Conclusion that the Disclosure Requirements of Section 1363.1 Are Mandatory*

We are not persuaded by Blue Cross's argument that we must reach a different result based on the absence of any discussion on noncompliance in the legislative history of section 1363.1. Blue Cross asked that we take judicial notice of the legislative history, which it contends reveals that the bill enacting section 1363.1 was introduced for several reasons, none of which included the intent to invalidate arbitration provisions in enrollment forms for noncompliance with the notice requirements of that statute.[14] This is true. Nevertheless, we have found that the scant legislative history confirms that the disclosure requirements of section 1363.1 were intended to be mandatory in order to ensure that health care consumers were aware that the execution of the enrollment form containing an arbitration provision would constitute a waiver of the right to a jury trial.[15] Consistent with this legislative

---

[13] We do not address whether the violation of other notice requirements of the Act would render a health service plan contract unenforceable.

[14] Blue Cross argued in its request for judicial notice that "if the Legislature had intended a violation of section 1363.1 to automatically render an arbitration clause unenforceable, or that the statute impliedly overruled Code of Civil Procedure section 1281, there would be some discussion of these topics in the legislative history. The absence of such a discussion supports Blue Cross's argument that section 1363.1 was not intended to have such a sweeping effect." For the reasons discussed in this opinion, we reject that argument.

[15] The author and sponsor of the bill, former Assemblymember Julie Bornstein, stated that the bill "addresses several public disclosure issues that would help health care consumers."

purpose, we read section 1363.1 as requiring health service plan enrollment forms to contain the advisements of that statute *as a condition* to the enforcement of the arbitration agreement.

### 5. *The Arbitration Agreement Does Not Fall Within an Exception to the Rule Permitting Enforcement of an Illegal Contract*

In the alternative, Blue Cross contends that the arbitration provision cannot be revoked on the grounds that it is an illegal contract because to do so would result in a disproportionately harsh penalty in relation to the gravity of a violation of a purely regulatory statute. We disagree and conclude that the common law defense of illegality is a separate and alternative ground for upholding the trial court's order denying Blue Cross's petition to compel.

"[G]enerally speaking, 'a contract made in violation of a regulatory statute is void,' . . . [however,] ' "the rule is not an inflexible one to be applied in its fullest rigor under any and all circumstances." ' " (*Arya Group, Inc. v. Cher* (2000) 77 Cal.App.4th 610, 615 [91 Cal.Rptr.2d 815], citing *Asdourian v. Araj* (1985) 38 Cal.3d 276, 291 [211 Cal.Rptr. 703, 696 P.2d 95].) "In compelling cases, illegal contracts will be enforced in order to 'avoid unjust enrichment to a defendant and a disproportionately harsh penalty upon the plaintiff.' [Citation.]" (*Asdourian v. Araj, supra,* at p. 292.) " ' "In each case, the extent of enforceability and the kind of remedy granted depend upon a variety of factors, including the policy of the transgressed law, the kind of illegality and the particular facts." ' [Citation.]" (*Ibid.*)

---

(Assem. Com. on Health, Analysis of Assem. Bill No. 3260 (1993–1994 Reg. Sess.) as amended Apr. 7, 1994, p. 3.)

The legislative material, of which we took judicial notice, contains a memorandum on Borenstein's letterhead that states: "This bill will require any health or disability insurance policy that contains a jury trial waiver or restriction clause to be prominently displayed on the form when signed by the enrollee. Last year, the Department of Corporations recommended that the Governor sign AB 2170, which included this provision only for health care service plans. However, they asked for the introduction of legislation this year to expand the bill beyond health care service plans. *The aim is to ensure consumer understanding of the waiver to jury trial if a dispute should arise. The waiver clause is required to be printed immediately above the signature line to confirm knowledge of such waiver.* Too many times enrollees sign health care contracts, failing to understand or read all the fine print regarding their rights. Requiring the waiver clause to be printed before the signature block should prevent any misunderstanding on the part of the consumer of their waiver of rights to a jury trial. . . ." (Assemblymember Borenstein, mem. re: Assem. Bill No. 3260 (1993–1994 Reg. Sess.), italics added.)

Application of these factors to the arbitration provision at issue here supports the conclusion that it should not be enforced. First, the policy of section 1363.1 is to protect health care consumers from the consequences of unknowingly waiving their right to a jury trial in a dispute with their health care service plan. The Maleks are members of the group primarily in need of the statute's protection. It would defeat the statutory purpose to allow Blue Cross to compel arbitration without first complying with the necessary disclosure requirements.

Second, although the violation of section 1363.1 does not involve the kind of illegality that automatically renders an agreement void, nevertheless, the parties were not equally at fault. Blue Cross knew or should have known of the disclosure requirements under section 1363.1. Indeed, as Blue Cross has admitted, the enrollment forms at issue here were printed *after* the enactment and effective date of section 1363.1.

Third, under the facts of this case, the arbitration provision should not be enforced. Blue Cross cites to several factors, suggesting that such a decision is a harsh one. It characterizes the violation of the statute as a technical one,[16] points to the fact that the arbitration was nearing completion, that the Maleks failed to bring *Smith, supra,* 93 Cal.App.4th 139, to the attention to the trial court for nearly a year after the decision was published, and that the Maleks had actual notice of their obligation to arbitrate this dispute. These factors overlook one important point; that is, the juxtaposition of the arbitration provision and the Maleks' signatures on the enrollment form, raises a concern as to whether the Maleks agreed to waive their right to a jury trial. This factor alone makes the arbitration provision unenforceable. This consequence is not disproportionately harsh because the purpose of section 1363.1 is to ensure that health care consumers *knowingly* waive their right to a jury trial.

This is not a case where the defendant retained the benefit of the bargain and would be unjustly enriched if the agreement were not enforced. In that respect, this case is distinguishable from *Felix v. Zlotoff* (1979) 90 Cal.App.3d 155, 163 [153 Cal.Rptr. 301]. Nor, as discussed, do the equitable factors support upholding the agreement upon which Blue Cross relies. (See, e.g., *Homestead Supplies, Inc. v. Executive Life Ins. Co.* (1978) 81 Cal.App.3d 978, 989–990, 992–993 [147 Cal.Rptr. 22].)

 As a health care service plan provider, Blue Cross should have been aware that section 1363.1 provided specific disclosure requirements. In this factual context, enforcing the arbitration provision would defeat the policy of

---

[16] Blue Cross takes the position that the arbitration provision in the enrollment form satisfied subdivision (b) of section 1363.1.

section 1363.1. We therefore conclude that the penalty, namely unenforceability for noncompliance with the arbitration disclosure requirements, is not disproportionately harsh in relation to the gravity of the violation.

### 6. The Blue Cross Enrollment Form Does Not Substantially Comply with Section 1363.1

Blue Cross next contends that the facts of this case merit the application of the doctrine of substantial compliance. Though no cases have applied the doctrine of substantial compliance in this context, Blue Cross asserts that it should be applied here because the violation of section 1363.1 is technical and inconsequential, as the Maleks repeatedly received actual notice of their arbitration obligation, making the fact that the signature block is not immediately below the arbitration provision "of no moment given the prominent placement of that [arbitration] provision on a one page form." We disagree with Blue Cross's position.

As discussed, we have concluded that the disclosure requirements of section 1363.1 are mandatory. That statute provides that the disclosures "shall appear" and "shall clearly state" and "shall be prominently displayed," and does not expressly sanction mere substantial compliance with its provisions. Nevertheless, to the extent that Blue Cross raises the substantial compliance doctrine in connection with mandating *literal compliance* of the statutory disclosure requirements to effectuate its objectives, we do not rule that doctrine out in the appropriate case. We find, however, that this is not such a case because the Blue Cross enrollment form did not substantially comply with section 1363.1.

" ' "Substantial compliance, as the phrase is used in the decisions, means *actual* compliance in respect to the substance essential to every reasonable objective of the statute." [Citation.] Where there is compliance as to all matters of substance technical deviations are not to be given the stature of noncompliance. [Citation.] Substance prevails over form. When the plaintiff embarks [on a course of substantial compliance], every reasonable objective of [the statute at issue] has been satisfied.' [Citation.]" (*Cal-Air Conditioning, Inc. v. Auburn Union School Dist.* (1993) 21 Cal.App.4th 655, 668 [26 Cal.Rptr.2d 703].)

Our primary concern is the objective of the statute. As we have discussed, contrary to Blue Cross's position, section 1363.1 is not just a notice statute. The purpose of section 1363.1 is to disclose the requirement to arbitrate *and* to ensure a knowing waiver of the right to a jury trial. The signature of the "individual enrolling in the health service plan" is required in order to ensure a knowing waiver of his or her rights.

In our view, the Blue Cross enrollment form did not satisfy these statutory objectives. It is disputable whether the arbitration provision satisfied the prominence requirement. As discussed, the arbitration notice provision was one of many indistinguishable paragraphs on the one-page form related to the plan. Nevertheless, assuming the notice requirement was satisfied with actual notice at a later date, there is no indication that the Maleks knowingly waived their right to a jury trial based on the juxtaposition of the signature line. The arbitration provision is on the left-hand side of the enrollment form while the signature line is on the lower right-hand side of the form. The signature line appears directly below the authorization to obtain or release medical information. This placement is not a technical defect of form because it leaves in doubt whether the Maleks knowingly waived their right to a jury trial. Under these circumstances, the statutory objectives of section 1363.1 have not been met.

Blue Cross contends that the facts of this case are distinguishable from those in *Imbler, supra,* 103 Cal.App.4th 567, where the court required strict compliance with the prominence requirement of subdivision (b) of section 1363.1. The *Imbler* court did not address substantial compliance because PacifiCare's failure to comply with the statute was not merely a technical violation. Likewise, Blue Cross's violations of section 1363.1 are not technical ones. Therefore, we conclude the substantial compliance doctrine does not apply.

In sum, the trial court correctly denied Blue Cross's petition to compel arbitration.

### *DISPOSITION*

For the reasons expressed herein, we affirm the trial court's orders vacating the arbitration award and denying Blue Cross's petition to compel arbitration. Each party to bear its own costs on appeal.

Klein, P. J., and Kitching, J., concurred.