178 Cal.App.4th 1081 (2009)
YANTING ZHANG, Petitioner,
v.
THE SUPERIOR COURT OF SAN BERNARDINO COUNTY, Respondent;
CALIFORNIA CAPITAL INSURANCE COMPANY, Real Party in Interest.
No. E047207.
Court of Appeals of California, Fourth District, Division Two.
October 29, 2009.
*1083 Viau & Kwasniewski, Gary K. Kwasniewski and Jeanette L. Viau for Petitioner.
No appearance for Respondent.
Grant, Genovese & Baratta, Lance D. Orloff and Aaron J. Mortensen for Real Party in Interest.

*1084 OPINION
RICHLI, Acting P. J.
This case presents the question of whether fraudulent conduct by an insurer, which is connected with conduct that would violate Insurance Code section 790.03 et seq.sometimes referred to as the Unfair Insurance Practices Actcan also give rise to a private civil cause of action under the unfair competition law (UCL), Business and Professions Code section 17200 et seq. The trial court ruled that it does not and, therefore, sustained defendant and real party in interest California Capital Insurance Company's demurrer to a cause of action under the UCL. We disagree and will direct the trial court to reinstate the cause of action.

STATEMENT OF FACTS
The factsprocedural factsand content of the allegations are not in dispute and may be quickly summarized. Plaintiff Yanting Zhang has sued her insurer, California Capital Insurance Company, over a dispute following a fire at Zhang's commercial premises. In the complaint's "Factual Background" and first two causes of actionbased on the legal theories of breach of contract and breach of the covenant of good faithZhang sets out a litany of misconduct relating generally to California Capital's handling of her loss claim and its refusal to authorize adequate payment under the policy for the repair and restoration of the premises. In the third cause of action, that based on the UCL, Zhang incorporates all 88 of the previous paragraphs, but she also alleges that defendant "engaged in unfair, deceptive, untrue, and/or misleading advertising . . . . [Defendant] promises its insureds that it will timely pay proper coverage in the event the insured suffers a covered loss . . . . However . . . [defendant] in fact has no intention of properly paying the true value of its insureds' covered claims. [¶] . . . [Defendant] had and has no intention of honoring such advertised promises."
Defendant demurred to this cause of action on the basis that the conduct alleged in the third cause of action was prohibited by Insurance Code section 790.03, and plaintiff could not state a private cause of action due to the decision in Moradi-Shalal v. Fireman's Fund Ins. Companies (1988) 46 Cal.3d 287 [250 Cal.Rptr. 116, 758 P.2d 58] (Moradi-Shalal). In accepting this position, the trial court also relied on Textron Financial Corp. v. National Union Fire Ins. Co. (2004) 118 Cal.App.4th 1061 [13 Cal.Rptr.3d 586] *1085 (Textron Financial). We are compelled to disagree in part with the decision in Textron Financial and to hold that Moradi-Shalal does not bar the claim under the UCL.

DISCUSSION
First, in reviewing a ruling on demurrer, we are not concerned with the plaintiff's ability to prove the allegations, but only with the allegations' adequacy to state a cause of action. (Quelimane Co. v. Stewart Title Guaranty Co. (1998) 19 Cal.4th 26, 38-39 [77 Cal.Rptr.2d 709, 960 P.2d 513].) We are also required to give a generous interpretation of the pleading in favor of stating a cause of action. (Sanchez v. City of Modesto (2006) 145 Cal.App.4th 660, 671 [51 Cal.Rptr.3d 821].) This means that if any of the allegations would support a cause of action under the UCL, it is immaterial, for our purposes, that some of them might not. For this reason, we find it unnecessary to determine whether plaintiff's allegations, found in other causes of action but incorporated into the UCL cause of action, relating to claim handling procedures would alone permit suit under the UCL. This is because we consider it clear that her claims of false advertising do support the cause of action.[1]
(1) In Moradi-Shalal, the Supreme Court reversed its decision in Royal Globe Ins. Co. v. Superior Court (1979) 23 Cal.3d 880 [153 Cal.Rptr. 842, 592 P.2d 329] and held that the prohibitory provisions of Insurance Code section 790.03[2] did not create a private right of action under the statute against "insurers who commit the unfair practices enumerated in that provision." (Moradi-Shalal, supra, 46 Cal.3d at p. 304.) While Moradi-Shalal was a "third party" casethat is, the plaintiff had been injured by the insurance defendant's insuredthe principle was later extended to "first party" suits, those brought by the insured against the insurer. (Zephyr Park v. Superior Court (1989) 213 Cal.App.3d 833, 837-838 [262 Cal.Rptr. 106].) Neither case expressly references the UCL, but both stand for what is now the *1086 accepted principle that a violation of section 790.03 does not result in a private cause of action for "unfair practices." To that extent we agree that plaintiff would be unable to state a cause of action for tort damages based directly and solely on real party in interest's alleged violations of the statute.
The issue before us, however, is not so simple.
(2) The UCL, which on its face applies to all "businesses" and certainly does not expressly except or exempt insurers, does authorize any injured person to sue for the violation of its requirements and/or prohibitionsthat is, for "unfair competition." (Bus. & Prof. Code, § 17204.) "Unfair competition" is defined in Business and Professions Code section 17200 to "include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising . . . ." Undoubtedly an insurer is subject to suit under the UCL, and numerous cases so reflect. (See, e.g., Quelimane Co. v. Stewart Title Guaranty Co., supra, 19 Cal.4th 26; Ticconi v. Blue Shield of California Life & Health Ins. Co. (2008) 160 Cal.App.4th 528 [72 Cal.Rptr.3d 888].)
In the case at hand, the trial court followed Textron Financial in ruling that the principles of Moradi-Shalal barred plaintiff's attempt to state a cause of action against California Capital under the UCL. Textron Financial is indeed quite similar to this case.[3] There, the plaintiff was a secured party with respect to the subject vehicle and alleged that when the owner cancelled coverage, the insurer failed to notify the plaintiff. The complaint alleged that the insurer "`used misleading documents to falsely suggest that it would provide insurance . . . where it had no intention to do so,' `falsely suggested that it would . . . provid[e] timely notice of [policy] cancellations,' `misrepresented the terms and meaning of its policies[, and] engaged in a pattern and practice of wrongful and false cancellations of insurance policies . . . .'" (Textron Financial, supra, 118 Cal.App.4th at p. 1070.)
In upholding the trial court's ruling sustaining the defendant insurer's demurrer to the UCL cause of action, the Court of Appeal commented that: "The specific allegations of wrongful conduct contained in plaintiff's fourth cause of action, using misleading documents and misrepresenting both the terms of the insurance policies and its obligations under them for its own *1087 benefit, are the type of activities covered by the [Unfair Insurance Practices Act]. (Ins. Code, § 790.03, subds. (a) & (h).)" (Textron Financial, supra, 118 Cal.App.4th at p. 1070.) The court relied on Safeco Ins. Co. v. Superior Court (1990) 216 Cal.App.3d 1491 [265 Cal.Rptr. 585] (Safeco), rejecting a third party UCL claim based on the insurer's having, during negotiations, taken the position that its insured was not legally liable for a certain item of claimed damages. This claim was concededly covered by Insurance Code section 790.03, subdivision (h)'s description of prohibited "unfair claims settlement practices." The Safeco court had "no difficulty" finding that Moradi-Shalal controlled and that the alleged misconduct would not support a UCL claim. (Safeco, at p. 1494.)
Safeco was a case in which the alleged misconduct of the insurer was very arguably only proscribed by the Unfair Insurance Practices Act, and we agree that the result in that case was required by Moradi-Shalal. Our differences with the Textron Financial courtand the trial court herearise from the fact that plaintiff in this case alleges conduct that is not merely improper under the Unfair Insurance Practices Act.
(3) The Supreme Court in Moradi-Shalal did not state that insurers who violate the Unfair Insurance Practices Act can never be liable in tort to the injured party, whether first party or third party. Indeed, after explaining that enforcement of violations of Insurance Code section 790.03 was vested solely in the insurance commissioner, it noted that "the courts retain jurisdiction to impose civil damages or other remedies against insurers in appropriate common law actions, based on such traditional theories as fraud, infliction of emotional distress, and (as to the insured) either breach of contract or breach of the implied covenant of good faith and fair dealing."[4] (Moradi-Shalal, supra, 46 Cal.3d at pp. 304-305.)
Consistent with this expression of understanding, in Manufacturers Life Ins. Co. v. Superior Court (1995) 10 Cal.4th 257, 267 [41 Cal.Rptr.2d 220, *1088 895 P.2d 56] (Manufacturers Life), the court expressly eschewed the idea that the Unfair Insurance Practices Act was intended to "displace existing right-sand remedies for unlawful business practices in the insurance industry," among them the Cartwright Act (Bus. & Prof. Code, §§ 16720-16770) and the UCL. The petitioning insurers in that case were attempting to persuade the court that they were in essence untouchable with respect to civil claims based on anticompetitive conduct, but the court rebuffed the argument by stating, "Nor has this court, or any other, accepted defendants' argument that the [Unfair Insurance Practices Act] exempts insurance companies from other state antitrust laws or from civil liability for anticompetitive conduct." (Manufacturers Life, at p. 279.) In explaining why nothing in Moradi-Shalal required a different result, the court commented that it had "concluded there that the Legislature did not intend to create new causes of action when it described unlawful insurance business practices in section 790.03, and therefore that section did not create a private cause of action under the [Unfair Insurance Practices Act]. . . . The [Unfair Insurance Practices Act] nowhere reflects legislative intent to repeal the Cartwright Act insofar as it applies to the insurance industry, and the Legislature has clearly stated its intent that the remedies and penalties under the [UCL] are cumulative to other remedies and penalties." (Manufacturers Life, at p. 284.)
We take from Manufacturers Life that there is no reason to treat insurers differently from other businesses when it comes to actions under the UCL except as required by Moradi-Shalal. We understand that if a plaintiff relies on conduct that violates the Unfair Insurance Practices Act but is not otherwise prohibited, Moradi-Shalal requires that a civil action under the UCL be considered barred. Thus, if plaintiff in this case had attempted to sue California Capital under the UCL because the latter had "[n]ot attempt[ed] in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear" (Ins. Code, § 790.03, subd. (h)(5)) or "[f]ailing, after payment of a claim, to inform insureds or beneficiaries, upon request by them, of the coverage under which payment [was] made" (Ins. Code, § 790.03, subd. (h)(9)), a somewhat closer question would be presented. (But see fn. 1, ante.) But that is not this case.
Plaintiff's specific additional allegations made part of the UCL cause of action were that real party in interest made fraudulent misrepresentations and promulgated misleading advertising with respect to its intentions to "pay proper coverage in the event the insured suffers a covered loss."
*1089 (4) As noted ante, the UCL, in Business and Professions Code section 17200, defines "unfair competition" to include "unlawful, unfair or fraudulent business" acts or practices, and "unfair, deceptive, untrue or misleading advertising." There can be no doubt that false advertising is a recognized basis for suit under the UCL both expressly as provided in the statutes and in case law. (See, e.g., Shersher v. Superior Court (2007) 154 Cal.App.4th 1491, 1494-1496 [65 Cal.Rptr.3d 634]; Linear Technology Corp. v. Applied Materials, Inc. (2007) 152 Cal.App.4th 115, 132-133 [61 Cal.Rptr.3d 221] [finding allegations insufficient]; Colgan v. Leatherman Tool Group, Inc. (2006) 135 Cal.App.4th 663, 679 [38 Cal.Rptr.3d 36]; Belton v. Comcast Cable Holdings, LLC (2007) 151 Cal.App.4th 1224, 1241 [60 Cal.Rptr.3d 631] [same].) The same is true for fraud. (See, e.g., McKell v. Washington Mutual, Inc. (2006) 142 Cal.App.4th 1457, 1471 [49 Cal.Rptr.3d 227].) No reason appears why an insurance company should not be subject to similar liability under the UCL if false advertising or similar misrepresentations can be proved. Thus, in Progressive West Ins. Co. v. Superior Court (2005) 135 Cal.App.4th 263 [37 Cal.Rptr.3d 434] (Progressive West), the courtalso dealing with a demurreranalyzed the pleading separately with respect to the sufficiency in alleging UCL unfair business practices, unlawful business practices, and fraudulent business practices. Although it acknowledged some doubt as to whether the alleged conduct qualified as "unfair," it had no difficulty finding that the plaintiff could maintain the UCL claim against the defendant insurer with respect to fraudulent conduct. We agree with the approach in Progressive West, and to the extent that Textron Financial is inconsistent, we disagree.[5]
(5) In our view, the court in Textron Financial focused too narrowly on the "unfair" prong of potential liability under the UCL.[6] It may be argued, as we have noted, that an act that is readily characterized as "unfair" solely because it is described in Insurance Code section 790.03 will not give rise to a UCL claim.[7] But, if a plaintiff expressly alleges conduct expressly prohibited *1090 by the UCL, such as fraudulent conduct likely to deceive the public (McKell v. Washington Mutual, Inc., supra, 142 Cal.App.4th 1457) or false advertising, there is simply no reason to apply Moradi-Shalal to prohibit the cause of action. Such a case does not represent an attempt to subvert or work around the Supreme Court's holding; although the Unfair Insurance Practices Act does not provide a private cause of action, in the UCL the Legislature clearly has provided such a remedy for conduct that falls within its purview. Again we stress that to construe the Unfair Insurance Practices Act as immunizing insurers from the consequences of misconduct that other business must suffer would simply make no sense. Moradi-Shalal does not require such a result and the decision in Manufacturers Life, in fact, supports this conclusion.
(6) At the very least, Zhang's allegations in the third cause of action that real party in interest solicited her business through false advertising and false promises clearly justifies a claim under the UCL. Although real party in interest argues strenuously and repeatedly that this is merely a "claims handling" dispute, this argument simply ignores the facts that Zhang has chosen to assert in the third cause of action. We caution that nothing in this opinion should be construed as a holding that Zhang can recover under this cause of action if she proves only that California Capital behaved unreasonably in handling her claim. She will also have to establish that real party in interest advertised or otherwise represented to the public that it operated honestly and equitably in settling claims and that it in fact had a policy or regular practice of "lowballing," delaying, or taking unfair advantage so that its advertising and/or representations were in fact likely to mislead the public. (See Bardin v. DaimlerChrysler Corp. (2006) 136 Cal.App.4th 1255, 1274 [39 Cal.Rptr.3d 634], noting that under the UCL it is not necessary to show that anyone was actually misled, only that the defendant's conduct was likely to mislead.)
Accordingly, the trial court erred[8] in sustaining real party in interest's demurrer.

*1091 DISPOSITION
The petition for writ of mandate is granted. Let a peremptory writ of mandate issue, directing the Superior Court of San Bernardino County to vacate its order sustaining real party in interest's demurrer to the third cause of action and to enter a new order overruling the demurrer.
Petitioner to recover her costs.
Gaut, J., and Miller, J., concurred.
NOTES
[1] However, we note that a strong case can be made for the proposition that the fact that specified actssuch as those involved in claims handlingmight be prohibited by Insurance Code section 790.03 should not give an insurer a "free pass" with respect to conduct that violates the UCL as well as that section. (See State Farm Fire & Casualty Co. v. Superior Court (1996) 45 Cal.App.4th 1093, 1098-1099 [53 Cal.Rptr.2d 229], criticized on other grounds in Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co. (1999) 20 Cal.4th 163, 184-185 [83 Cal.Rptr.2d 548, 973 P.2d 527].) This is, in effect, the argument that we find both compelling and well supported by authority with respect to the claim of false or fraudulent advertising. As we can decide this case on the latter basis, we need not determine the broader issue.
[2] Part of the Unfair Insurance Practices Act.
[3] Due to the similarity, real party in interest argues that it is "dispositive." While the decision was binding on the trial court, which correctly followed it (Auto Equity Sales, Inc. v. Superior Court (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937]), as a decision of a sister court it is not binding on us.
[4] We recognize that plaintiff's cause of action is founded on statutory unfair competition, and the quoted language from Moradi-Shalal indicates only that Insurance Code section 790.03 in no way preempts or prohibits common law causes of action. However, we do not consider this to be a sub silentio statement that statutory claims or causes of action are barred. Moradi-Shalal does not discuss or consider that issue, and cases are not, of course, authority for propositions not raised. (Harwell Corp. v. Superior Court (2002) 27 Cal.4th 256, 281 [115 Cal.Rptr.2d 874, 38 P.3d 1098].) Furthermore, any such contention is contradicted by the result in Manufacturers Life Ins. Co. v. Superior Court.
[5] The Progressive West decision does not cite Textron Financial. Interestingly, the Supreme Court denied review in both cases.
[6] The Textron Financial court noted the decision in State Farm Fire & Casualty Co. v. Superior Court, supra, 45 Cal.App.4th 1093, but believed that it had been "undercut" by the Supreme Court's criticism of the decision's broad interpretation of "unfair" in Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co., supra, 20 Cal.4th at page 185 (Cel-Tech). But while Cel-Tech limited the scope of "unfair" in competitor UCL actionsthat is, to conduct that was essentially anticompetitive in a traditional senseit did not deal with consumer UCL cases. Whether a broader definition of "unfair" applies in such cases is currently a matter of dispute. (See discussion in Progressive West, supra, 135 Cal.App.4th at pp. 285-287.)
[7] However, as the court noted in State Farm Fire & Casualty Co. v. Superior Court, supra, 45 Cal.App.4th 1093, the problem with cases such as Safeco, supra, 216 Cal.App.3d 1491 was that the plaintiffs were attempting to do an "end run" around Moradi-Shalal and seeking compensatory and punitive damagesthe same remedies that Moradi-Shalal held were not available under Insurance Code section 790.03. Where, as here and in State Farm Fire & Casualty Co. v. Superior Court, supra, 45 Cal.App.4th 1093, the plaintiff seeks only the statutory UCL remedies of restitution and injunction, the "end run" attempt does not exist.
[8] Under, as we have noted, compulsion by the decision in Textron Financial.