[No. B228889. Second Dist., Div. Three. May 24, 2012.]

ERIC E. ORTEGA, Plaintiff and Appellant, v.
TOPA INSURANCE COMPANY et al., Defendants and Respondents.

## COUNSEL

Milstein, Adelman, Paul D. Stevens, Mayo L. Makarczyk; Law Offices of F. Edie Mermelstein, Edie Mermelstein; Law Offices of Gregory Patton, Gregory Patton and Robert Mosier for Plaintiff and Appellant.

Selman Breitman, Neil Selman and Rachel E. Hobbs for Defendants and Respondents.

## OPINION

**ALDRICH, J.**—Plaintiff and class representative Eric E. Ortega had a restricted policy of automobile insurance in which the insurer, defendant Topa Insurance Company (Topa), provided two tiers of physical damage coverage, paying all of the reasonable costs incurred at the insurer's preferred repair facility (PRF), but only 80 percent of the reasonable costs incurred at an unapproved repair facility selected by the insured. Ortega filed a class action complaint against Topa arising from the two-tier coverage alleging two statutory violations: Topa's payment practice is unlawful under Insurance Code section 758.5, subdivision (d)(2) and the application for insurance did not prominently disclose the limited physical damage coverage in violation of subdivision (d)(1).[1] In several motions before class certification, the trial court determined that the Topa policy and application did not violate the statute and thereafter struck the class allegations because the operative second amended complaint (complaint) did not plead the requisite class requirements. (Code Civ. Proc., § 382.)

In what appears to be an issue of first impression, we conclude the insurance application meets the statutory disclosure requirement and "prominently discloses" to the applicant that the auto insurance policy he or she applied for includes a contract provision suggesting or recommending a particular automotive repair facility. The Topa insurance application states "this is a restricted policy," and contains a separate section entitled "certification of the applicant," explaining the limited physical damage coverage and asking the applicant to certify his or her understanding of the restricted policy.

We also conclude the limited physical damage coverage provision in the policy does not violate section 758.5, subdivision (d)(2), and agree with *Maystruk v. Infinity Ins. Co.* (2009) 175 Cal.App.4th 881 [96 Cal.Rptr.3d 494] (*Maystruk*). To the extent that policyholders used a PRF to repair their

---

[1] Insurance Code section 758.5 states in pertinent part: "(d) Any insurer that, by the insurance contract, suggests or recommends that an automobile be repaired at a particular automotive repair dealer shall also do both of the following: [¶]

"(1) Prominently disclose the contractual provision in writing to the insured at the time the insurance is applied for and at the time the claim is acknowledged by the insurer. [¶]

"(2) If the claimant elects to have the vehicle repaired at the shop of his or her choice, the insurer shall not limit or discount the reasonable repair costs based on charges that would have been incurred had the vehicle been repaired by the insurer's chosen shop."

Unless otherwise stated, all further statutory references are to the Insurance Code.

damaged vehicle and were not satisfied with the repairs because the facility did not return the covered vehicle to its preloss condition, the trial court did not err in concluding that the complaint does not allege common issues of fact. Thus, we affirm the order striking the class allegations.

## BACKGROUND

1. *Insurance Application and Limited Physical Damage Coverage in the Policy*

Topa's application for auto liability and physical damage insurance states in bold lettering on the first page: "**This is a restricted policy.**"[2] In the boxed-off section entitled "CERTIFICATION OF APPLICANT," the application states in the second paragraph: "I certify that I understand that this is a restricted policy with coverage limitations and that I am aware of the policy limitations. I understand that in exchange for reduced physical damage premiums this policy has limited physical damage coverages and that repairs must be effected by an approved Preferred Repair Facility. Should I decide to have repairs performed by an unapproved facility, coverage will be limited to 80% of the covered loss subject to all applicable deductibles." This boxed-off section includes three other paragraphs, each one separated by spacing. This section also has a signature line for the applicant to "certify" his or her understanding of the terms of the restricted policy. Ortega's wife signed the application.

Topa issued the restricted policy to the Ortegas. The payment of loss provision states: "At *our* option we may: [¶] . . . [¶] (f) require that repair or replacement be effected by a 'Preferred Repair Facility'. [*sic*] 'Preferred Repair Facility' means an organization that meets and maintains repair and replacement standards required by *us* and which ensures quality repair and replacement services on all business that *we* direct to them. If *you* decide to have repairs or replacement services performed by other than a 'Preferred Replacement Facility,' [*sic*] *we* will pay only eighty percent (80%), less any applicable deductible, of the amount necessary to repair or replace the damaged or stolen property."

The payment of loss provision further states that in determining the amount necessary to restore damaged property to its preloss condition, the estimate will be based upon the prevailing competitive labor rates and "the cost of

---

[2] Although the application is not attached as an exhibit to the complaint, the parties entered into a stipulation that the application and policy could be considered by the trial court to determine threshold legal issues.

repair or replacement parts, which may be new, refurbished, restored, or used, including, but not limited to: [¶] (1) original manufacturer parts or equipment; and [¶] (2) nonoriginal manufacturer parts or equipment."

Ortega's 2003 Mercedes Benz E320 was a covered vehicle under this policy.

## 2. Events Alleged in the Complaint Leading to This Class Action

The complaint alleges that Ortega filed a claim under the policy when Ortega's Mercedes was vandalized. Ortega intended to select a repair facility, but Topa's third party claims administrator informed him in writing of the limited physical damage coverage in his policy.

Ortega took his car to a PRF, but he allegedly was dissatisfied with the repairs and reported additional damages. Ortega alleged the PRF repairs did not restore his car to its preloss condition because the PRF replaced the damaged parts with nonoriginal equipment or manufacturer (non-OEM) parts.

## 3. Class Action Complaint

Ortega filed a class action complaint against Topa arising from the two tiers of physical damage coverage. Ortega alleged the limited physical damage coverage provision in the policy violates section 758.5, subdivision (d)(2). Ortega also alleged the insurance application violates the disclosure requirement of section 758.5, subdivision (d)(1). Ortega sought to represent three putative classes.

"Class A" is described as the "Discounted Claimant Class," and consists of Topa policyholders who chose to take their vehicles to non-PRF's and were "subjected to an unlawful discount."[3]

"Class B," referred to as the "Steered Claimant Class," is defined in the complaint as those policyholders who took their vehicles to PRF's for repairs and had non-OEM parts used in the repair that disrupted the warranty by

---

[3] Class A is defined as: "All current and former California policyholders of a California personal automobile insurance policy issued or administered by defendants containing the subject language, who submitted an insurance claim to defendants for automobile repair at any time from December 26, 2003 to the present, chose to go to a non-PRF and were subjected to an unlawful discount in benefits based on choosing a non-PRF." (Original capitalization omitted.)

failing to repair the vehicle to its preloss condition.[4] In subsequent proceedings, Class B was redefined to remove the disruption of warranty language and instead specified the categories of non-OEM parts used in repairs.[5]

"Class C" is the "Policyholder Class," which includes policyholders who were subject to the "stated general business practice of requiring claimants to use a PRF or incur a twenty percent (20%) discount for using a non-PRF of the policyholder's choice."[6]

Ortega, individually, and on behalf of the putative classes, asserted causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, and violations of the Consumers Legal Remedies Act (CLRA) (Civ. Code, § 1750 et seq.) and the unfair competition law (UCL) (Bus. & Prof. Code, § 17200 et seq.).

The breach of contract and breach of the implied covenant of good faith and fair dealing causes of action were brought on behalf of the Discounted Claimant Class (Class A) and Steered Claimant Class (Class B), alleging in exchange for the payment of premiums, the putative classes had a right to choose their own vehicle repair facility without having to incur an unlawful discount, and also had a right to have their covered vehicle restored to preloss condition. Further, the insurance policy contained a provision that the policy must conform to state law, and these provisions violated California's antisteering law. The breach of implied covenant cause of action also alleged the Topa application for insurance did not meet the statutory disclosure requirement.

---

[4] Class B as alleged in the complaint was defined as: "All current and former California policyholders of a California personal automobile insurance policy issued or administered by defendants containing the subject language, who submitted an insurance claim to defendants for automobile repair for an automobile under a manufacturers' warranty at any time from December 26, 2003 to the present, were steered to a PRF by defendants, had non-OEM replacement parts used in the repair that disturbed the manufacturers' warranty thereby failing to bring the covered automobile to its pre-loss condition." (Original capitalization omitted.)

[5] As revised, Class B consists of: "All current and former California policyholders of a California personal automobile insurance policy issued or administered by defendants containing the subject language, who submitted an insurance claim to defendants for automobile repair any time from December 26, 2003 to the present, took their vehicle to a PRF and had non-original equipment manufacturer radiator, suspension, engine components, cooling and heating systems, air conditioning, sheet metal and electrical parts used in the repair." (Original capitalization omitted.)

[6] Class C is defined as: "All current and former California policyholders of a California personal automobile insurance policy issued or administered by defendants containing the subject language, from December 26, 2003 to the present, who were subject to Defendants' stated general business practice of requiring claimants to use a PRF or incur a twenty percent (20%) discount for using a non-PRF of the policyholder's choice." (Original capitalization omitted.)

The CLRA and UCL causes of action, alleged on behalf of all three putative classes, are based upon the failure to meet the statutory disclosure requirement in the application, and the "unconscionable" and "unlawful" limited physical damage coverage provision in the policy.

Before class certification, the parties agreed to brief certain threshold legal issues.

## 4. Trial Court Strikes Majority of Class Allegations

The parties asked the trial court to determine the following legal issues: (1) whether the complaint states sufficient facts to maintain the class action; (2) whether the complaint states a cause of action for breach of contract and breach of the implied covenant of good faith and fair dealing; and (3) whether the Topa policy violates section 758.5.[7]

### a. Trial Court Rules Only the Steered Claimant Class (Class B) Is Viable

Employing the requirements of Code of Civil Procedure section 382, the trial court determined the Discounted Claimant Class (Class A) and the Policyholder Class (Class C) could not maintain a class action lawsuit because the complaint failed to allege common questions of fact and law, and these classes were not ascertainable.

As for the Steered Claimant Class (Class B), the trial court determined the redefined class was ascertainable. Citing *Lebrilla v. Farmers Group, Inc.* (2004) 119 Cal.App.4th 1070 [16 Cal.Rptr.3d 25], the trial court also concluded common questions of law and fact predominated at the pleading stage. Thus, only Class B met the requirements to proceed as a class for "purposes of overcoming a pleading challenge."

### b. Trial Court Rules the Contract Causes of Action Asserted on Behalf of the Steered Claimant Class (Class B) Survive Demurrer

The trial court determined Ortega and the putative Steered Claimant Class (Class B) could proceed with their contract and implied breach of covenant

---

[7] Topa also asked the court to determine whether Ortega could maintain a private right of action under section 758.5. The trial court concluded that section 758.5 could serve as the predicate statute for a UCL claim. In *Hughes v. Progressive Direct Ins. Co.* (2011) 196 Cal.App.4th 754 [126 Cal.Rptr.3d 750], review granted September 28, 2011, S195069, Division Seven of this court reached the same conclusion. Review was granted in *Hughes* but deferred pending consideration and disposition of a related issue in *Zhang v. Superior Court* (2009) 178 Cal.App.4th 1081 [100 Cal.Rptr.3d 803], review granted February 10, 2010, S178542. We need not reach this issue to resolve this appeal.

causes of action. But, the trial court narrowed these claims. Although the court struck certain allegations, it concluded the complaint sufficiently alleged that, if the limited physical damage coverage provision violated section 758.5, the provision breached the policy requiring compliance with applicable law and requiring Topa to restore the covered vehicle to its preloss condition.

### c. Trial Court Concludes There Is No Statutory Violation

While denying Topa's motion for summary judgment on the contract and breach of implied covenant causes of action, the trial court determined as a matter of law that Topa's application for insurance and the Topa policy did not violate section 758.5. The trial court concluded the application for automobile insurance met the disclosure requirement in subdivision (d)(1). Relying on *Maystruk, supra*, 175 Cal.App.4th 881, the trial court also concluded the limited physical damage coverage provision did not violate subdivision (d)(2). Thus, Ortega "can no longer premise his complaint on the bare notion that he was damaged *solely* by Topa's employment of the two-tier benefit structure . . . ."

In light of these legal determinations, the trial court invited Topa to file a motion to strike the remaining class allegations asserted on behalf of the Steered Claimant Class (Class B).

### 5. Trial Court Grants Motion to Strike Remaining Class Allegations

Topa moved to strike the remaining allegations related to the Steered Claimant Class (Class B) on the ground that *Maystruk, supra*, 175 Cal.App.4th 881, resolved the issue that neither the limited physical damage coverage provision in the Topa policy nor the use of non-OEM parts for vehicle repairs violated the law. The trial court agreed, striking the class allegations asserted on behalf of Class B. The court's ruling disposed of the remaining contract and breach of the implied covenant causes of action. In its order, the trial court inadvertently referred to the original definition of Class B in the complaint, but in a motion for reconsideration, the court reached the same conclusion as to the redefined class.

Although no final judgment has been entered, the trial court's order struck all the class allegations from the complaint. Ortega timely appealed under the "death knell" doctrine. (*Alch v. Superior Court* (2004) 122 Cal.App.4th 339, 359–360 [19 Cal.Rptr.3d 29].)

### DISCUSSION

While generally an order granting a motion to strike is not an appealable order, in this case, the trial court's order is effectively a final judgment. The

order at issue in this case struck all class allegations from the complaint. Such an order is appealable, even if made at the pleading stage. "Whatever its form, an order that has the effect of denying certification as a class action disposes of that action and is an appealable final judgment." (*Prince v. CLS Transportation, Inc.* (2004) 118 Cal.App.4th 1320, 1322, fn. 2 [13 Cal.Rptr.3d 725].)

### 1. *Standards of Review*

We independently review the statutory questions presented in this appeal addressing (1) whether the Topa application violates the disclosure requirement in subdivision (d)(1) of section 758.5 and (2) whether the limited physical damage coverage provision in the insurance policy violates subdivision (d)(2) of section 758.5. (*Pineda v. Williams-Sonoma Stores, Inc.* (2011) 51 Cal.4th 524, 529 [120 Cal.Rptr.3d 531, 246 P.3d 612].)

An appeal from a denial of class certification is subject to an abuse of discretion standard. (*Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 326–327 [17 Cal.Rptr.3d 906, 96 P.3d 194].) When the trial court's order striking the class allegations are akin to a general demurrer, we determine the issues as questions of law after assuming the truth of the factual allegations. (See *Walnut Producers of California v. Diamond Foods, Inc.* (2010) 187 Cal.App.4th 634, 641 [114 Cal.Rptr.3d 449].) Thus, for purposes of our analysis, we assume the allegations to be true, but we must determine if the allegations are legally sufficient to assert a class action on behalf of the putative classes.

Specifically, Ortega contends the Steered Claimant Class (Class B) and the Policyholder Class (Class C) allegations were sufficient at the pleading stage. We turn to this legal issue mindful of the principle that we may affirm an order sustaining a demurrer on grounds presented by the record whether or not relied on by the trial court (*Maystruk, supra,* 175 Cal.App.4th at p. 887) or on grounds first raised on appeal (*Alfaro v. Community Housing Improvement System & Planning Assn., Inc.* (2009) 171 Cal.App.4th 1356, 1396 [89 Cal.Rptr.3d 659] [" 'An appellate court may . . . consider new theories on appeal from the sustaining of a demurrer to challenge or justify the ruling.' "]; *Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 880, fn. 10 [6 Cal.Rptr.2d 151] [appellate "court will still affirm the demurrers even if the trial court relied on an improper ground, whether or not the defendants asserted the proper ground in the trial court"]).

As shall be discussed, we conclude the complaint fails to allege a statutory violation of section 758.5, subdivision (d)(1) and (2). Thus, the breach of contract and breach of the implied covenant causes of action, and the CLRA

and UCL claims based upon a statutory violation fail as a matter of law.[8] We also conclude the trial court did not err in finding that the contract claims asserted on behalf of the Steered Claimant Class (Class B), which allege the PRF used non-OEM parts and did not restore the covered vehicle to its preloss condition, do not plead common issues of fact as required under Code of Civil Procedure section 382.

2. *Topa's Insurance Application Meets Statutory Disclosure Requirement*

■ Ortega contends the Steered Claimant Class (Class B) and the Policyholder Class (Class C) are entitled to damages, equitable relief, and a judicial determination that the policy provision setting forth the limited physical damage coverage is unenforceable because Topa's insurance application does not meet the disclosure requirement in subdivision (d)(1) of section 758.5.[9] Section 758.5, subdivision (d)(1) states the insurer must "[p]rominently disclose" in the application for insurance that the insurance contract applied for suggests or recommends an automobile be repaired at a particular automotive repair dealer. What constitutes "[p]rominently disclose" is not further defined in the statute.

■ Contrary to Ortega's contention, compliance with section 758.5 is not subject to the special rules governing interpretation of insurance contracts, which require strict construction against the insurer. Rather, the meaning of the disclosure requirement in section 758.5, subdivision (d)(1) is subject to the rules of statutory construction. (*B & E Convalescent Center v. State Compensation Ins. Fund* (1992) 8 Cal.App.4th 78, 93 [9 Cal.Rptr.2d 894].) Our goal in construing section 758.5, subdivision (d)(1) is to ascertain and effectuate the intent of the Legislature. We first look to the plain meaning of the statute because it is generally the most reliable indicator. If there is no ambiguity or uncertainty, we need not resort to principles of statutory construction to determine the statute's true meaning. (See *Voices of the Wetlands v. State Water Resources Control Bd.* (2011) 52 Cal.4th 499, 518–519 [128 Cal.Rptr.3d 658, 257 P.3d 81].)

[8] In light of our resolution of this appeal on other grounds, we do not discuss two unsettled legal issues, namely, whether section 758.5, subdivision (d) may be the predicate statute for a UCL claim (see fn. 7, *ante*), or whether the CLRA applies to automobile insurance policies (see *Fairbanks v. Superior Court* (2009) 46 Cal.4th 56, 61–62 [92 Cal.Rptr.3d 279, 205 P.3d 201] [life insurance is not a "good" or "service" covered by the CLRA]).

[9] Ortega has presented no contentions or legal analysis regarding the trial court's order striking from the complaint the allegations asserted on behalf of the Discounted Claimant Class (Class A). We therefore treat the issue as waived. (See *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 [57 Cal.Rptr.3d 363].)

■ While we appear to be the first appellate court to construe the disclosure requirement in section 758.5, subdivision (d)(1), we have previously concluded in another statutory context that the Legislature's use of "prominently displayed" is understood to mean " ' "standing out," ' " "readily noticeable," or "conspicuous." (*Malek v. Blue Cross of California* (2004) 121 Cal.App.4th 44, 60–62 [16 Cal.Rptr.3d 687] (*Malek*); see *Imbler v. PacifiCare of Cal., Inc.* (2002) 103 Cal.App.4th 567, 578–579 [126 Cal.Rptr.2d 715].) But, this gets us only so far; while the Legislature required that the disclosure in subdivision (d)(1) of section 758.5 "stand out," it did not state how, and the Legislature appears to have given insurance companies the right to choose what typeface, format, heading, positioning, and any other device they might use to make this disclosure conspicuous in the insurance application.

Ortega contends our opinion in *Malek, supra*, 121 Cal.App.4th 44, dictates by parity of reasoning that to meet the statutory disclosure requirement of section 758.5, subdivision (d)(1), the text in the insurance application must be in a different type size and font, in a separately numbered paragraph or section in the application. (*Malek, supra*, at p. 61.) Ortega's reliance on *Malek* is misplaced.

*Malek, supra*, 121 Cal.App.4th 44, addressed, among other things, the prominence requirement of a binding arbitration provision in a health care service plan contract. We concluded the arbitration provision did not meet the prominence requirement of Health and Safety Code section 1363.1, subdivision (b)[10] because the provision was the same type size and font as other provisions in the contract authorizing deductions and release of medical information. (*Malek, supra*, at p. 61.) We were concerned that unless the type and font stood out from the other provisions in the enrollment form related to medical services, enrollees would not notice that in signing up for a health care service plan, they also waived their right to a jury trial. (*Ibid.*)

Unlike *Malek*, we are not dealing with a provision involving the waiver of a constitutional right, namely the right to a jury trial, that is unrelated to the subject matter of the contract. The disclosure requirement in section 758.5, subdivision (d)(1) relates to the restricted nature of the applied-for automobile insurance policy. The title of the application puts the applicant on notice that "**[t]his is a restricted policy.**" In a separate, boxed-off section, under the heading, "CERTIFICATION OF APPLICANT," the applicant must sign and

---

[10] Health and Safety Code section 1363.1 states, in pertinent part: "Any health care service plan that includes terms that require binding arbitration to settle disputes and that restrict, or provide for a waiver of, the right to a jury trial shall include, in clear and understandable language, a disclosure that meets all of the following conditions: [¶] . . . [¶] (b) The disclosure shall appear as a separate article in the agreement issued to the employer group or individual subscriber and shall be prominently displayed on the enrollment form signed by each subscriber or enrollee."

certify his or her understanding of the nature of this restricted policy. The second paragraph in this separate section states that in exchange for reduced premiums, the policy has "limited physical damage coverages" and repairs must be "effected by an approved Preferred Repair Facility." The applicant also is informed that under the restricted policy if he or she decides to have repairs performed by an unapproved facility, coverage will be limited. While the disclosure is in the second of four paragraphs in that separate section, there is additional spacing between each paragraph. This spacing gives each of these four paragraphs greater prominence and makes each one easier to read. We read the application as a whole, with special emphasis on the formatting of the certification section, as meeting the statutory disclosure requirement. Thus, we reject Ortega's contention that the statutory disclosure requirement in section 758.5, subdivision (d)(1) may only be satisfied with larger typeface, bold font, and a specific heading.

We also reject Ortega's additional arguments related to specific formatting requirements, and his contention that the insurer must set forth verbatim the policy language in the application.[11] If the Legislature had intended to impose specific requirements on insurance companies, it would have said so in section 758.5, subdivision (d)(1).

Although it is not necessary to consider the legislative history, our review of the limited legislative history confirms our interpretation of the disclosure requirement in section 758.5, subdivision (d)(1). The purpose of the legislation was to strengthen "existing . . . sections" of the Fair Claims Settlement Practices Regulations (Cal. Code Regs., tit. 10, § 2695.8), which required written notice if the insurer recommended that an automobile be repaired at a specific shop, but the regulation was silent as to when the written notice must be given to the insured. (Sen. Com. on Insurance, Analysis of Sen. Bill No. 551 (2003–2004 Reg. Sess.) as amended Apr. 28, 2003, pp. 3–4.) The author of the bill recognized that a policyholder should be informed of his or her right to choose a repair shop in a reasonable manner, and the time of greatest need would be after an accident and before arranging for repairs. (*Id.* at p. 4.) The legislative history provides little insight into why the Legislature ultimately decided that the disclosure to the insured of his or her right to choose a repair shop also should be made at the time the insured applied for the policy. This additional disclosure shows the Legislature also must have intended to inform the insured of his or her rights to choose a repair shop *before* obtaining a restricted policy. The Topa application stating it is a

---

[11] Ortega also contends the disclosure paragraph in the application is "visibly smaller" than the 10-point font required under section 758.5, subdivision (b)(3). The Legislature did not specify a font size in subdivision (d)(1).

restricted policy and informing the applicant of the limited physical damage coverage satisfies the legislative purpose to inform the insured of his or her rights.

■ Our conclusion that the Topa application meets the statutory disclosure requirement in section 758.5, subdivision (d)(1) is buttressed by cases applying the well-settled rule that an insurer must make "conspicuous, plain and clear" any policy provision that creates an exception to or limitation on coverage reasonably expected by the insured. (*Haynes v. Farmers Ins. Exchange.* (2004) 32 Cal.4th 1198, 1204 [13 Cal.Rptr.3d 68, 89 P.3d 381].) "A coverage limitation is conspicuous when it is positioned and printed in a manner that will attract the reader's attention." (*Boghos v. Certain Underwriters at Lloyd's of London* (2005) 36 Cal.4th 495, 505 [30 Cal.Rptr.3d 787, 115 P.3d 68], citing *Haynes v. Farmers Ins. Exchange, supra,* at pp. 1207–1208.) Courts have rejected a similar argument presented by Ortega that a provision is inconspicuous when it is in the same typeface as the remainder of the insurance policy and instead have relied on positioning and formatting to reach the conclusion that the exclusion provision is conspicuous. (See, e.g., *Zubia v. Farmers Ins. Exchange* (1993) 14 Cal.App.4th 790, 795–796 [18 Cal.Rptr.2d 65].) Here, the disclosure requirement and the policy exclusions in the application are formatted to stand out from other text. These sections are boxed off with separate signature lines to ensure the applicant understands the limits of the applied-for automobile insurance policy. This satisfies the statutory disclosure requirement. Thus, the causes of action asserted on behalf of the class for a violation of section 758.5, subdivision (d)(1) fail as a matter of law.

### 3. *Topa Insurance Policy Does Not Unlawfully Steer Policyholders*

Ortega, and the classes he purports to represent, also contend the Topa insurance policy violates section 758.5, subdivision (d)(2), alleging that the limited physical damage coverage provision is unlawful because it steers policyholders by requiring them to use a Topa PRF. There is no statutory violation.

■ In *Maystruk, supra,* 175 Cal.App.4th 881, the court concluded section 758.5, subdivision (d)(2) did not require 100 percent coverage. The *Maystruk* court analyzed almost the identical limited physical damage coverage provision at issue here. (*Maystruk,* at pp. 888–889.) The Infinity policy in *Maystruk* contained the following limitation of coverage clause: " '*If . . . you choose to utilize a repair facility which is not a RSVP* [(*Repair Satisfaction Vehicle Program*)] *Shop, we will pay Eighty percent (80%) of the fair and responsible charges from that repair facility.*' " (*Id.* at p. 884.) The *Maystruk* court concluded there was no statutory violation because section 758.5,

subdivision (d)(2) did not prohibit two tiers of coverage. The statute specifically states the only time the insurer is required to pay 100 percent of the repair costs is when the insured accepts the insurer's recommendation to take the vehicle to a specific shop. "Under those circumstances, 'the insurer shall cause the damaged vehicle to be restored to its condition prior to the loss at no additional cost to the claimant other than as stated in the policy or as is otherwise allowed by law.' (§ 758.5, subd. (b)(2).)" (175 Cal.App.4th at p. 888, fn. omitted;[12] see Croskey et al., Cal. Practice Guide: Insurance Litigation (The Rutter Group 2011) ¶ 6:2029, pp. 6G-5 to 6G-6 (rev. # 1, 2011).)

We agree with the *Maystruk* court's interpretation of section 758.5, subdivision (d)(2). Since the class claims do not allege any other statutory violation arising from a reduced rate of coverage, the complaint fails to assert a statutory violation. Thus, the causes of action based upon a violation of section 758.5, subdivision (d)(2) fail as a matter of law, and no amendment will cure this pleading defect.

In sum, the complaint does not allege a statutory violation. Thus, the causes of action asserting violations of the CLRA and UCL fail. Likewise, the contract and breach of the covenant of good faith and fair dealing causes of action alleging the Topa insurance policy does not comply with applicable law also fail.

> 4. *Common Issues of Fact Do Not Predominate to Support Class Action Treatment of Remaining Contract Claims Alleged by the Steered Claimant Class (Class B)*

As appellants correctly point out, *Maystruk* did not address whether the use of non-OEM parts breaches the insurance contract. Business and Professions Code section 9875.1 permits an insurer to require the use of non-OEM aftermarket crash parts in the repair of an insured's vehicle with certain disclosures. Thus, the mere use of non-OEM aftermarket crash parts is not actionable unless the use of these parts does not restore the vehicle to its preloss condition as required under the policy.

In his reply brief, Ortega clarifies that the Steered Claimant Class (Class B) contract causes of action based upon the use of non-OEM parts arise from a violation of the disclosure requirement in the application for insurance. Ortega's reply brief states: "Allegations in the operative complaint referencing defendants' use of non-OEM parts and other inadequate cost saving

---

[12] The Legislature has since amended section 758.5, and the language quoted in *Maystruk* now appears in subdivision (b)(3) of section 758.5. The amendments apply to actions filed on or after January 1, 2010. (§ 758.5, subd. (g).) This case was filed before January 1, 2010.

measures, speaks to the Steered Claimant Class' measureable damages, not the theory of liability on which the complaint is based." As we have stated, there is no statutory violation, and on that basis, these remaining class allegations were properly stricken.

Ortega, however, also appears to contend that the Steered Claimant Class members (Class B) have asserted viable causes of action for breach of contract and breach of the implied covenant because (1) they were not given the required notice that the PRF intended to use the non-OEM parts, which we assume is the notice required under the California Code of Regulations, and (2) the use of universally inferior non-OEM parts by the PRF did not restore covered vehicles to preloss condition. Based upon these contentions, the trial court concluded the allegations asserted on behalf of the Steered Claimant Class (Class B) did not plead common questions of law and fact. We find no basis to reverse this order. (*Sav-On Drug Stores, Inc. v. Superior Court, supra*, 34 Cal.4th at pp. 326–327.) ·

■ Code of Civil Procedure section 382 authorizes class actions "when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court . . . ." The party seeking certification must show the existence of an ascertainable class and a well-defined community of interest. The "community of interest" requirement embodies, among other things, predominant common questions of law and fact. (*Sav-On Drug Stores, Inc. v. Superior Court, supra*, 34 Cal.4th at p. 326.) When the invalidity of the class allegations is revealed on ·the face of the complaint, the class issue may properly be adjudicated by demurrer or motion to strike. (*Canon U.S.A., Inc. v. Superior Court* (1998) 68 Cal.App.4th 1, 5 [79 Cal.Rptr.2d 897].)

Ortega patterns the Steered Claimant Class (Class B) contract causes of action after the plaintiffs in *Lebrilla v. Farmers Group, Inc., supra*, 119 Cal.App.4th 1070. In *Lebrilla*, the plaintiffs sought statewide class certification in a suit against an automobile insurer, alleging the installation of sheet metal parts (known as crash parts), which were not manufactured by original equipment manufacturers, resulted in substandard repairs that did not restore their damaged vehicles to preloss condition. (*Id.* at pp. 1072–1073.) The appellate court considered whether the trial court erred by denying the motion for class certification on the ground that common issues of law and fact did not predominate. The focus of the court's analysis was "whether a class can establish imitation crash parts are *uniformly* not of like kind and quality as OEM parts." (*Id.* at p. 1077.) The *Lebrilla* court agreed with persuasive out-of-state authority that the issue could be decided on a classwide basis. (*Id.* at pp. 1083–1084.)

We do not read *Lebrilla v. Farmers Group, Inc., supra*, 119 Cal.App.4th 1070, to suggest, for example, that all non-OEM replacement parts are uniformly inferior. That case addressed crash parts. (*Id.* at p. 1073 & fn. 1.) In this case, to recover damages each member of the putative Steered Claimant Class (Class B) must identify the non-OEM part, which includes radiators and heat and cooling systems, among others, and prove the particular manufacturer's part is inferior. Thus, unlike *Lebrilla*, the court would have to determine whether the installed repair part is inferior. As alleged, common issues do not predominate.

Ortega and the putative class also appear to contend that they may proceed on a classwide basis because they did not receive notice from the PRF that the facility intended to use non-OEM aftermarket crash parts. (Bus. & Prof. Code, § 9875.1, subd. (a) ["The written estimate shall clearly identify each such part with the name of its nonoriginal equipment manufacturer or distributor."]; Cal. Code Regs., tit. 10, § 2695.8, subd. (g)(5) ["No insurer shall require the use of non-original equipment manufacture[r] replacement crash parts in the repair of an automobile unless: [¶] . . . [¶] (5) the use of non-original equipment manufacturer replacement crash parts is disclosed in accordance with section 9875 of the California Business and Professions Code."].) Assuming, without deciding, that these notice provisions are applicable to some of the putative class as currently defined, whether and when an insured received notice, also is an individual inquiry.

Ortega's own claim illustrates the individual inquiries for the court. He alleges the "door locks" and "headlamp" were replaced with "unacceptable non-OEM parts."[13] Ortega had the headlamp replaced with a "regulation headlamp," and expended $2,132.53 to make that repair. To determine whether Ortega is entitled to any relief, the court must decide whether the non-OEM replacement door locks and headlamps were inferior parts. Although Ortega asks this court for an opportunity for leave to amend the classwide allegations asserted on behalf of the Steered Claimant Class (Class B), he fails to present any proposed allegations. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) Thus, the remaining class allegations asserted on behalf the Steered Claimant Class (Class B), alleging a breach of the insurance contract and breach of the implied covenant of good faith and fair dealing based upon the use of non-OEM parts to repair covered vehicles, were properly stricken from the complaint.

---

[13] We assume these non-OEM parts are among the categories in the definition of the Steered Claimant Class (Class B).

## DISPOSITION

The trial court's order striking the class allegations in the second amended complaint is affirmed. Respondents are entitled to costs on appeal.

Croskey, Acting P. J., and Kitching, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 8, 2012, S203767.