Filed 8/19/14

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| JANIS S. McLEAN, | C074515 |
| Plaintiff and Appellant, | (Super. Ct. No. 34-2012-00119161-CU-OE-GDS) |
| v. | |
| STATE OF CALIFORNIA et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Raymond M. Cadei, Judge. Affirmed in part and reversed in part.

Kershaw, Cutter & Ratinoff, William A. Kershaw, Lyle W. Cook, and Stuart C. Talley for Plaintiff and Appellant.

The Law Offices of Brooks Ellison and Patrick J. Whalen for California Attorneys, Administrative Law Judges and Hearing Officers in State Employment as Amicus Curiae for Plaintiffs and Appellants.

Kamala D. Harris, Attorney General, Fiel D. Tigno, Supervising Deputy Attorney General, and William T. Darden, Deputy Attorney General, for Defendants and Respondents..

1

Plaintiff Janis McLean, a retired deputy attorney general, appeals from a judgment of dismissal after the trial court sustained the demurrer of defendants the State of California and the California State Controller's Office to her class action seeking waiting time penalties under Labor Code section 203[1] for the failure to comply with the prompt payment requirements of section 202. She contends the trial court erred in ruling that the term "quits" in sections 202 and 203 does not apply to employees who quit to retire.

As we will explain, in the context of sections 202 and 203, we agree with McLean that requirements applying to employees who quit also apply to employees who quit to retire. We therefore reverse the judgment as to the State of California. However, because we hold that it was unnecessary to name the California State Controller's Office as a defendant, we affirm the judgment of dismissal as to the controller's office.

## BACKGROUND

*The Complaint*

The operative pleading is the first amended complaint (FAC). It alleges that McLean worked for the State of California until she retired from the Attorney General's office on November 16, 2010. She separated from service the same day she retired. She did not receive her final wages on her last day of employment or within 72 hours of that date. The correct amount of her wages for unused leave and vacation time were not transferred into her supplemental retirement plan within 45 days of the last day of her employment, as she requested. She did not receive wages that she had elected to defer to 2011 by February 1, 2011.

The FAC alleged, on information and belief, that defendants failed to make prompt payments required by section 202 to the Plaintiff Class. The Plaintiff Class was defined as all employees employed by the state who resigned or retired from their

---

[1]  Further undesignated statutory references are to the Labor Code.

2

employment November 2010 through March 2011, who did not receive prompt payment of wages as required by section 202.**2**

The FAC alleged that on June 14, 2011, McLean filed a claim with the California Victim Compensation and Government Claims Board on behalf of herself and the Plaintiff Class. The Board rejected the claim.

The FAC contained one cause of action titled "For Violations of California Labor Code Section 202 and Relief under California Labor Code Section 203." It alleged that section 202 required defendants to do the following for employees who resigned or retired: (1) pay final wages within 72 hours, or immediately at the time of resignation if given 72 hours notice of the employee's intent to resign; (2) transfer wages for unused leave and vacation time to a state sponsored supplemental retirement plan within 45 days of the employee's last day of employment, if the employee so requested; and (3) transfer any wages that the employee elects to defer to the following calendar year by February 1 of that next year. The FAC alleged defendant did not promptly pay McLean her full wages when she retired and that defendants did not timely pay final wages to the Plaintiff Class.

The FAC sought penalties, costs of suit and expenses, and reasonable attorney fees.

*Defendants' Demurrer*

Defendants demurred on the ground that the FAC failed to state facts sufficient to constitute a cause of action. Specifically, defendants contended that since McLean *retired*, rather than "quit," which is the relevant descriptive word actually used in the statute, there was no basis for her claim for penalties under section 203 and she had not stated a claim for a violation of section 202. Defendants argued that section 202 applied

---

**2** We detail section 202 *post* in part III.

only to an employee who quits, and, by retiring, McLean did not quit. Further, defendants claimed that neither the State of California nor the California State Controller's Office was McLean's employer; rather, she was employed by the Department of Justice. Defendants moved to strike considerable portions of the FAC.

Defendants requested judicial notice of two documents: (1) the legislative history of Assembly Bill No. 1684, which approved a memorandum of understanding between the state and State Bargaining Unit 2, the Association of California State Attorneys and Administrative Law Judges, and amended section 202; and (2) provisions of the State Administrative Manual regarding payrolls upon employee separations.

McLean requested judicial notice of the Legislative Counsel's Digest of Assembly Bill No. 2410, which amended section 220 to make sections 202 and 203 applicable to the state. She also requested judicial notice of a different provision of the State Administrative Manual concerning the controller's payroll functions.

*Ruling and Judgment*

At the hearing on the demurrer, McLean indicated that if the trial court were to affirm its tentative ruling sustaining the demurrer, she would prefer that the demurrer be sustained without leave to amend, so she could immediately seek appellate review.

The trial court granted the requests for judicial notice. It sustained the demurrer without leave to amend, finding that section 203 does not authorize penalties for employees who have retired. The motion to strike was dropped as moot.

The court entered judgment in favor of defendants. McLean appealed.

**DISCUSSION**

**I**

*Standard of Review*

"Because the function of a demurrer is to test the sufficiency of a pleading as a matter of law, we apply the de novo standard of review in an appeal following the sustaining of a demurrer without leave to amend. [Citation.] We assume the truth of the

4

allegations in the complaint, but do not assume the truth of contentions, deductions, or conclusions of law.  [Citation.]  It is error for the trial court to sustain a demurrer if the plaintiff has stated a cause of action under any possible legal theory, and it is an abuse of discretion for the court to sustain a demurrer without leave to amend if the plaintiff has shown there is a reasonable possibility a defect can be cured by amendment.  [Citation.]" (*California Logistics, Inc. v. State of California* (2008) 161 Cal.App.4th 242, 247.)  We will affirm the trial court's decision to sustain the demurrer if it was correct on any theory.  (*Stonehouse Homes LLC v. City of Sierra Madre* (2008) 167 Cal.App.4th 531, 539.)

"When considering an appeal from a judgment entered after the trial court sustained a demurrer without leave to amend, we 'accept as true all well-pleaded facts in the complaint and give a reasonable construction to the complaint as a whole.' [Citations.]  In addition, we may consider matters that are properly the subject of judicial notice, and were considered by the trial court.  [Citation.]" (*La Serena Properties*, *LLC v. Weisbach* (2010) 186 Cal.App.4th 893, 897.)

II

*Statutory Interpretation*

Resolution of this case requires interpretation of various provisions of the Labor Code.  Our fundamental task in construing a statute is to ascertain the Legislature's intent so as to effectuate the purpose of the law.  (*Hassan v. Mercy American River Hospital* (2003) 31 Cal.4th 709, 715.)  The first step in the interpretative process is to examine the words of the statute, because "statutory language is generally the most reliable indicator of legislative intent."  (*Ibid*.)  We give the words of a statute their ordinary and usual meaning and construe them in the context of the statute as a whole.  (*Ibid*.)  "Courts should give meaning to every word of a statute if possible, and should avoid a construction making any word surplusage.  [Citation.]"  (*Arnett v. Dal Cielo* (1996) 14 Cal.4th 4, 22.)

5

"Ordinarily, if the statutory language is clear and unambiguous, there is no need for judicial construction. [Citation.] Nonetheless, a court may determine whether the literal meaning of a statute comports with its purpose. [Citation.] We need not follow the plain meaning of a statute when to do so would 'frustrate[] the manifest purposes of the legislation as a whole or [lead] to absurd results.' [Citations.]" (*California School Employees Assn. v. Governing Board* (1994) 8 Cal.4th 333, 340.)

When the plain meaning of the statutory language is insufficient to resolve the question of interpretation, we proceed to the second step of statutory construction. In this step, "we may consider various extrinsic aids to help us ascertain the lawmakers' intent, including legislative history, public policy, settled rules of statutory construction, and an examination of the evils to be remedied and the legislative scheme encompassing the statute in question. [Citation.]" (*McAllister v. California Coastal Com* (2008) 169 Cal.App.4th 912, 928.) "Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent. [Citations.]" (*Dyna–Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1387; accord, *Mejia v. Reed* (2003) 31 Cal.4th 657, 663.) "Finally, the court may consider the impact of an interpretation on public policy, for '[w]here uncertainty exists consideration should be given to the consequences that will flow from a particular interpretation.' [Citation.]" (*Mejia,* at p. 663.)

Labor Code provisions governing an employee's wages are liberally construed to effect their remedial purpose. (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1027.) Such laws "reflect the strong public policy favoring protection of workers' general welfare and 'society's interest in a stable job market.' [Citations.]" (*United Parcel Service Wage and Hour Cases* (2010) 190 Cal.App.4th 1001, 1009.) " '[I]n light of the remedial nature of the legislative enactments authorizing the regulation of wages, hours and working conditions for the protection and benefit of employees, the statutory provisions are to be liberally construed with an eye to promoting such

6

protection.'  [Citations.]"  (*Brinker,* at pp. 1026-1027; see also *Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1103 (*Murphy*) [given the Legislature's remedial purpose, "statutes governing conditions of employment are to be construed broadly in favor of protecting employees"].)

### III
### *Prompt Payment Laws*

The prompt payment of wages due an employee is a fundamental public policy of California.  (*Gould v. Maryland Sound Industries, Inc.* (1995) 31 Cal.App.4th 1137, 1147.)  "Public policy has long favored the 'full and prompt payment of wages due an employee.'  [Citation.]  '[Wages] are not ordinary debts . . . .  [Because] of the economic position of the average worker and, in particular, his dependence on wages for the necessities of life for himself and his family, it is essential to the public welfare that he receive his pay' promptly.  [Citation.]"  (*Pressler v. Donald L. Bren Co.* (1982) 32 Cal.3d 831, 837.)

The Labor Code contains several provisions governing the payment of wages to an employee who terminates service with his employer.  Section 201 requires immediate payment of earned and unpaid wages to an employee who is discharged.  There are special rules for temporary service employees (§ 201.3), employees engaged in the production or broadcasting of motion pictures (§ 201.5), employees engaged in the business of drilling oil (§ 201.7), and employees employed at venues that host live theatrical or concert events (§ 201.9).

Section 202, one of the sections at issue here, provides in relevant part as follows:

"(a)  If an employee not having a written contract for a definite period *quits his or her employment*, his or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting. . . .

"(b)  Notwithstanding any other provision of law, the state employer shall be deemed to have made an immediate payment of wages under this section for any unused or accumulated vacation, annual leave, holiday leave, sick leave . . . or time off . . . , provided at least five workdays prior to his or her final day of employment, the employee

7

submits a written election to his or her appointing power authorizing the state employer to tender payment for any or all leave to be contributed on a pretax basis to the employee's account in a state-sponsored supplemental retirement plan . . . provided the plan allows those contributions. The contribution shall be tendered for payment to the employee's 401(k), 403(b), or 457 plan account no later than 45 days after the employee's last day of employment. . . .

"(c) Notwithstanding any other provision of law, when a *state employee quits, retires, or disability retires from his or her employment* with the state, the employee may, at least five workdays prior to his or her final day of employment, submit a written election to his or her appointing power authorizing the state employer to defer into the next calendar year payment of any or all of the employee's unused or accumulated vacation, annual leave, holiday leave, sick leave to which the employee is otherwise entitled due to a disability, retirement, or time off to which the employee is entitled by reason of previous overtime work where compensating time off was given by the appointing power. . . .

[¶] . . . [¶]

"Payments shall be tendered under this section no later than February 1 in the year following the employee's last day of employment. . . ." (Emphasis added.)

Section 203, subdivision (a) provides: "If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.3, 201.5, 202, and 205.5, any wages of an employee who is discharged or *who quits*, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." (Emphasis added.)

Sections 202 and 203 apply to the state as an employer. (§ 220, subd. (a).)

IV

*"Quits" as used in Sections 202 and 203*

A. *Plain Meaning*

McLean contends the plain meaning of the term "quits," as used in the phrase *an employee who quits* in sections 202 and 203, includes an employee who "retires." McLean reasons that the terms "quits" and "retires" both refer to a voluntary separation from service and an employee must quit before she can retire. She contends the

8

"undeniable overlap" of the two terms requires that "quits" includes "retires." She argues the penalties provided in section 203 apply to the failure to pay wages timely to employees who terminate their service with the employer, whether the termination is initiated by the employer (a discharge), or by the employee (a quit). She posits there is no reason to believe the Legislature intended to treat employees who planned to retire upon separation of service differently than those who were discharged or who quit for other employment.

The parties and the trial court offer a variety of dictionary definitions to support their positions. Relying on the 1985 edition of New Webster's Dictionary, the trial court defined "retire" as "to go from a company or a public place into privacy" or "to withdraw from business or active life," while "quit" in the employment context means "to resign," which means "to give up, as an office or post." McLean relied on the Merriam-Webster online dictionary, which defined "quit" as "to leave a job" or "to stop working" (http://merriam-webster.com/dictionary/quit [as of 3/12/14] ), and "retire" as "to stop a job or career because you have reached the age when you are not allowed to work anymore or do not need or want to work anymore." (http://merriam-webster.com/dictionary/retire [as of 3/12/14]) Defendants contend dictionary definitions are of little aid, but note that Black's Law Dictionary defines "retire" as "to terminate employment or service upon reaching retirement age." (Black's Law Dict. (5th ed. 1979) p. 1183, col. 2.) A later edition, however, defines "retirement" more broadly as "termination of one's employment or career, esp. upon reaching a certain age or for health reasons." (Black's Law Dict. (10th ed. 2014) p. 1510, col. 1.)

Like defendants, we find these dictionary definitions are not dispositive. However, we note that all of the definitions of the term "quit" seem to encompass the definitions describing retirement, as all the definitions speak to leaving a job.

Defendants contend the issue in this case must be understood in the context of civil service employment as McLean and the members of the class she purports to represent are civil service employees. They assert we need not determine how section 203 applies to any separation from service other than a civil service retirement.

9

Defendants argue that in the civil service context it is well recognized that a "quit" is different from a "retirement." (See *Gore v. Reisig* (2013) 213 Cal.App.4th 1487, 1493 ["At the point in time that an employee leaves employment, he or she falls into one of three categories—a resigned employee, a terminated employee, or a retired employee."]; *Lucas v. State of California* (1997) 58 Cal.App.4th 744, 750 [civil service statutes expressly distinguish separation from a civil service position by resignation and separation by service retirement].)

Defendants contend that in the civil service, a quit is clearly distinguishable from retirement, and this distinction is reflected in the language of subdivision (c) of section 202 (section 202(c)): "when a state employee quits, retires, or disability retires from his or her employment with the state." According to defendants, this language *distinguishes* between a quit and a retirement, and adds a third category, a disability retirement.

While the instant case involves civil service employees, section 202, subdivision (a) (section 202(a)) and section 203 are not so limited. These statutes apply to *all* employers and employees not otherwise excluded (such as city and county employees, who are excluded under subdivision (b) of section 220), including those in the private sector. (§ 220.) Nothing in the language of either statute permits an interpretation where the word "quits" has one meaning for the state employer and its employees, and another meaning where the employers and employees are in the private sector. We decline to adopt an interpretation of a statute which adds a distinction between types of employers and employees "which is neither expressly included in nor suggested by its plain language." (*Panos v. Superior Court* (1984) 156 Cal.App.3d 626, 630.) "Doing so would violate the cardinal rule that a statute ' . . . is to be interpreted by the language in which it is written, and courts are no more at liberty to add provisions to what is therein declared in definite language than they are to disregard any of its express provisions.' [Citation.]" (*Wells Fargo Bank v. Superior Court* (1991) 53 Cal.3d 1082, 1097.)

10

B. *Legislative History*

Since the plain language of the statutes does not definitively establish whether an employee who "quits" includes an employee who "retires," we turn to the second step of statutory construction and consider extrinsic sources.

Defendants rely on the legislative history of Assembly Bill No. 1684, which added subdivisions (b) and (c) to section 202 in 2002. The purpose of the bill was to approve a memorandum of understanding entered into by the state employer and State Bargaining Unit 2, the Association of State Attorneys and Administrative Law Judges. (Stats. 2002, ch. 40, §§ 1-2, p. 458.)

As the enrolled bill report explains, "This bill also corrects an unintended result that occurred with the enactment of AB 2410. AB 2410 amended section 220 of the Labor Code thereby making sections 201, 202, and 206.5 applicable to the State as an employer. As a result, the State employer is now required to tender the 'prompt payment of wages' due and owing to an employee upon separation from State employment. In the case of an employee terminated (discharged) by the employer, all wages must be tendered on his/her last day of employment. In the case of an employee who quits without giving the employer 72 hours' notice, the employer must tender payment within 72 hours of the employee's last day of employment. Because payments must be made within these time frames, the State can no longer allow employees to rollover into a subsequent tax year lump sum payments for accrued leave due the employee upon separation. Similarly, these shortened time frames place the State at risk to be assessed penalties in the event the lump sum contribution cannot be tendered to the employee's supplemental retirement plan (plan administrator or recordkeeper) within the time frame specified for payment under the Labor Code. Section 206.5 prohibits employers from entering into private agreements with employees to waive their right to prompt payment of wages. [¶] The intent in this bill is to restore a benefit State employees previously enjoyed which allows them to contribute the cash value of their accrued leave . . . to an employer sponsored 401(k), 403b, and/or 457 Plan on a pre-tax basis and/or defer receipt of payment for such

11

leave into the next tax year, subject to the payroll procedures of the State Controller's Office."

Defendants contend the newly created section 202(c) *had* to specify it applied to "an employee who quits, retires, or disability retires from his or her employment with the state," because under civil service a "quit" and a "retirement" were understood to be different things. They further contend the new law "ensure[d]" that a retirement was not included in the penalty provisions of section 203 (presumably by *not* amending §§ 202(a) and 203 to include the word retire, see part C, *post*).

Defendants' argument presupposes that the term "quits" in sections 202 and 203 may have a different meaning depending on whether state employment or private employment is at issue. We have rejected that interpretation of the statutes, as discussed *ante*. To the contrary, it appears that the Legislature specified "quits, retires, or disability retires" in section 202(c) because that subdivision, unlike section 202(a) or section 203, applies *only* to state employees by its express terms, and in that context, the terms have different meanings. Further, if the general rule of section 202(a) and the penalty provisions of section 203 *did not apply* to an employee who retires, it would clearly be unnecessary for section 202(c) to discuss employees who retire. Defendants do not discuss this fact, despite McLean's lengthy discussion of it in her briefing.

The legislative history offered by defendants does not show that in using the term "quits" in section 202(a) and section 203, the Legislature intended to exclude employees who separate from employment to retire.

C. *Rules of Statutory Construction*

Defendants contend that under well-settled rules of statutory construction, the terms "quits" and "retires" cannot have the same meaning because the Legislature used only the term "quits" in sections 202(a) and 203, while it used both "quits" and "retires" in section 202(c). They argue that "retires" cannot be implied in section 202(a) and section 203, and if "quits" includes "retires," then the use of "retires" in section 202(c) is surplusage. Although possessing some surface appeal, defendants' argument fails to persuade.

12

"When the Legislature 'has employed a term or phrase in one place and excluded it in another, it should not be implied where excluded.' [Citation.]" (*Pasadena Police Officers Assn. v. City of Pasadena* (1990) 51 Cal.3d 564, 576.) "When two statutes touch upon a common subject, they are to be construed in reference to each other, so as to 'harmonize the two in such a way that no part of either becomes surplusage.' [Citations.] Two codes ' "must be read together and so construed as to give effect, when possible, to all the provisions thereof." ' [Citation.]" (*DeVita v. County of Napa* (1995) 9 Cal.4th 763, 778-779.)

We agree that: "Where different words or phrases are used in the same connection in different parts of a statute, it is presumed the Legislature intended a different meaning." (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1117.) The inference, of course, is stronger when the different parts of the statute are enacted at the same time. (See *People v. Jones* (1988) 46 Cal.3d 585, 596 ["when different words are used in contemporaneously enacted, adjoining subdivisions of a statute, the inference is compelling that a difference in meaning was intended"], italics omitted.) That is not the case here as section 202(b) and (c) were added in 2002. (Stats. 2002, ch. 40, § 7, pp. 461-462.)

As discussed at length *ante,* section 202(c) refers to an employee who "quits, retires, or disability retires." A disability retirement is a particular type of retirement and therefore a subset of "retires." Thus, the phrase "quits, retires, or disability retires" can be understood as listing the types of separation from employment from the most general, "quits," to the most specific, "disability retires," rather than as listing three entirely distinct occurrences. The reason for the different language is explained by the different contexts. In enacting subdivisions (b) and (c) of section 202, the Legislature was concerned with only *state* employees, and understood that "quits," "retires," and "disability retires" have particular meanings in that context. This distinction is not generally made in private sector employment and so it was unnecessary to make it in the more general provisions of section 202(a) and section 203, which originally applied only to private employees and employers, and now apply to the State as well.

13

Finally, the rules of statutory construction must yield to the purpose and intent of a statute. (See *Costco Wholesale Corp. v. Workers' Comp. Appeals Bd.* (2007) 151 Cal.App.4th 148, 154-155 [the "last antecedent rule does not trump" considerations of "the spirit of the statute . . . as a whole"].) Statutes governing conditions of employment, such as the payment of wages, are to be liberally construed "in favor of protecting employees." (*Murphy, supra*, 40 Cal.4th at p. 1103.) This policy and purpose is not furthered by excluding retirees from the full protections of section 202, enforced by the penalty provisions of section 203. We interpret an employee who "quits" in section 202(a) and section 203 to include an employee who quits to retire.[3]

V

*Proper Defendants*

Defendants contend that even if McLean has a viable claim under section 203, the demurrer was properly sustained because she sued the wrong defendants. Since section 203 imposes penalties upon an employer, the proper defendant is her employer and defendants argue McLean's employer is the Department of Justice, which contains the Attorney General's office.

While the trial court did not reach this argument, we must address it. "A judgment of dismissal after a demurrer has been sustained without leave to amend will be affirmed if proper on any grounds stated in the demurrer, whether or not the court acted on that ground. [Citations.]" (*Carman v. Alvord* (1982) 31 Cal.3d 318, 324.)

The State of California clearly was McLean's employer and defendants' argument to the contrary borders on frivolous. Defendants concede that McLean was a civil service employee. "The civil service includes every officer and employee of the State except as otherwise provided in this Constitution." (Cal. Const., art. VII, § 1, subd. (a); see

---

[3] Amicus California Attorneys, Administrative Law Judges and Hearing Officers in State Employment requests that we take judicial notice of the original and amended versions of Assembly Bill No. 1684 and a CalPers publication relating to retirement. Because we find these documents are not necessary to our decision, we deny the request. (*Aguiar v. Cintas Corp. No. 2* (2006) 144 Cal.App.4th 121, 128, fn. 2.)

14

*Colombo v. State of California* (1991) 3 Cal.App.4th 594, 598 ["As a CHP traffic officer, Russell Colombo is a civil service employee of the State of California, paid by the state, not the CHP."].) Sections 202 and 203 apply "to the payment of wages of employees directly employed by the State of California." (§ 220, subd. (a).) Indeed, subdivision (b) of section 202 refers to "the state employer" and subdivision (c) of that section refers to "a state employee."[4]

Defendants contend the controller's office is not a proper party defendant because it is not McLean's employer. The FAC alleges that the controller's office "is responsible for disbursing any and all wages owed to" state employees upon resignation or retirement. It further alleges that the State of California and the controller's office failed to make these payments on a timely basis. Thus, the FAC alleges wrongful conduct by the controller's office. It is not necessary, however, to name the controller's office as a party defendant. An action against state agencies in their capacity as such is, in effect, an action against the state. Thus it is sufficient to name only the state as party defendant. (*Bacich v. Board of Control* (1943) 23 Cal.2d 343, 346 [approving substituting the state as party defendant in place of the defendants Board of Control, California Toll-Bridge Authority, and Department of Public Works].) Accordingly, the trial court did not err in sustaining the demurrer of the controller's office.

VI

*Class Allegations*

For the first time on appeal, defendants contend the demurrer was properly sustained because McLean does not have standing to represent the Plaintiff Class as defined in the complaint. The FAC defines the Plaintiff Class as employees employed by the state who resigned or retired during a certain time period. Defendants contend that

---

[4] Defendants argue, unconvincingly, that these statutory terms are merely "helpful shorthand." To accept this argument is to find the words do not mean what they say, which would undermine the basic rule of statutory construction to give the words of a statute "their usual and ordinary meaning." (*DaFonte v. Up-Right, Inc.* (1992) 2 Cal.4th 593, 601.)

since McLean retired instead of resigning, she cannot represent those who resigned and since the Department of Justice is her employer, she can represent only those employed by that agency.

Although defendants did not raise any challenge to the class allegations in the demurrer, "an appellate court may consider new theories on appeal from the sustaining of a demurrer to challenge or justify the ruling." (*Ortega v. Topa Ins. Co.* (2012) 206 Cal.App.4th 463, 472.)

We can easily dispose of these contentions. We have already explained that "quits" in sections 202 and 203 includes all employees who quit, whether to retire or for a different reason, and these employees constitute a single group under the statutory scheme. We have also explained that McLean's employer is the State of California. We do not opine on the issue of class certification or reach any other issue regarding McLean's class allegations.

## DISPOSITION

As to defendant controller's office, the judgment is affirmed. As to defendant State of California, the judgment is reversed and the matter remanded for further proceedings. McLean shall recover costs on appeal. (Cal. Rules of Court, rule 8.278(a)(3).)


                                             DUARTE           , J.



We concur:



     BUTZ           , Acting P. J.



     HOCH           , J.

16